International & G. N. R. R. Co., Moses Taylor et al. v. Paul Bremond.

*(Case No. 855.)*

1. Railway company — Consolidation.— The consolidation of the Houston & Great Northern, and the International Railway companies, was unauthorized and wrongful as to a stockholder of the former company objecting thereto, and the same having been consummated by a wrongful appropriation of the stockholder's equitable interest, the consolidated company was equitably bound to him therefor.

2. Same. — The two railway enterprises differed so widely in their starting points, and the region of country to be traversed, that an original subscriber to the Houston & Great Northern Company might well object that he had not agreed to or authorized such a union, nor did he, by failing to object to a subsequent enlargement of the charter, which, whether it actually gave such power or not, did not, on its face, purport to give any power to consolidate, preclude himself from objecting to a consolidation making so fundamental a change in the objects of the corporation.[1]

3. Consolidation of railway companies — Liability of directors.— A stockholder in a railway company which, against his protest, has been consolidated without authority of law with another company, by the action of other stockholders, and whose equitable interest has been wrongfully appropriated by the consolidated company, cannot maintain an action for the injury against the directors of the company, as such; nor

[1] In the opinion of Associate Justice Gould, the policy of the state, now contained in the constitution, to forbid consolidation of parallel and competing railroads, was indicated in 1873 by like restrictions inserted in numerous charters, then granted; and it was not the design of the act of May 8, 1873, to depart from that policy and confer an unlimited power of consolidation.

are the directors responsible to the corporation for a consolidation effected by act of the stockholders.

4. LACHES. — A stockholder in a railway company, against whose protest a consolidation was illegally effected by the company with another railway company, delayed for more than two years the institution of proceedings against the consolidated company for the appropriation of his equitable interests: *held*, that while the delay might preclude him from enjoining the further prosecution of the consolidated enterprise, it did not prevent him from following up his equitable interest in the hands of a corporation, which, by appropriating it without authority, became equitably bound to compensate him therefor.

5. SAME. — A railway company, in an action against it by a stockholder for wrongful conversion of his interests, is not precluded by the erroneous estimates of its officials, embodied in a published report, from showing the true value of its assets.

APPEAL from Harris. Tried below before the Hon. James Masterson.

Suit by Paul Bremond, brought on the 3d day of December, A. D. 1875, against the Houston & Great Northern Railroad Company, the International & Great Northern Railroad Company, and against W. E. Dodge, Jacob S. Wetmore, Wm. M. Rice, C. Ennis, G. A, Grow, W. J. Hutchins, W. W. Phelps and C. E. Noble, seeking a recovery of sixty thousand dollars as his interest in the stock of the Houston & Great Northern Railroad Company.

He alleged that in 1870 he subscribed for $100,000 stock in the Houston & Great Northern Railroad Company, paid on it all installments ever demanded of him, aggregating $40,000 paid up to 24th of November, 1871.

He alleged that the company was incorporated October 22, 1866, and that the individual defendants were its directors on the 1st day of January, 1874, and the company was, on that day, consolidated with the International Railroad Company, under the name of the "International & Great Northern Railroad Company," and that said directors, without being properly authorized, transferred all of the assets, franchises and effects of his company to the new company, having constituted themselves directors in the new company.

7

He alleged this transfer and consolidation to be a conversion of his property; that it was procured by the directors by breach of trust, faith and confidence, and that the assets were received by the consolidated company in collusion with them.

He alleged that the company had large assets; that his interest was worth $50,000; and claimed the recovery back of the installments paid and interest thereon, or the value of his stock and interest in the company, from the defendants, all of whom, he alleged, fraudulently and collusively united to destroy and convert his property against his repeated protests.

Defendants answered with:

1. General demurrer.

2. General denial.

3. Admitted the consolidation, but justified the same on the following grounds, viz.:

That in 1871, the directors of the Houston & Great Northern Railroad Company purchased the property franchises of the Houston Tap & Brazoria Railroad Company, which was an incorporation under the laws of Texas; that the purchase was approved by the stockholders in the company, including plaintiff, and that in the charter of the "Tap" was a provision that it might consolidate with any other company, by a vote of two-thirds of its stockholders.

That on the 8th of May, 1873, the legislature of Texas passed an act consolidating the Houston & Great Northern Railroad Company with the Houston Tap & Brazoria Railroad Company, by which it granted to the former all the franchises and privileges of the latter; that in the charter of the latter was a provision authorizing its consolidation with any other company. This, they claimed, passed to and was bestowed on the Houston & Great Northern Railroad Company by this act.

4. They pleaded that the consolidation was effected by a vote of more than two-thirds of the stockholders, at a special meeting called for that purpose, September 27, 1873, and attached the proceedings of the meeting, showing the vote, and the articles showing the terms of the consolidation, which

they justify, and plead that it has been ratified by the legislature.

5. They pleaded that as far back as February, 1872, articles of agreement to consolidate were in existence, and had been ratified by the stockholders, of the same purport as those of the actual consolidation, and they exhibited them, and that from that date on the two companies were operated as one consolidated company.

That plaintiff, knowing these things, and taking no steps to prevent it, was estopped to complain of them.

A jury was waived, cause submitted to the court, and judgment for appellee against appellants, for $43,182.30, who gave notice of appeal.

The appellants severed in their assignments, and the directors, Wm. E. Dodge, J. S. Wetmore, Cornelius Ennis, Moses Taylor, Wm. M. Rice and Galusha A. Grow, assigned errors, apparent from the opinion.

The Houston & Great Northern Railroad Company was incorporated by act of the legislature of Texas, on the 22d of October, 1866, for the purpose of constructing a railroad from Houston to Red river, passing as near Montgomery, Huntsville, Crockett, Rusk and Tyler as practicable.

No section of the charter contained authority to consolidate.

It was agreed that the Houston & Great Northern Railroad Company consolidated with the International Railroad Company, and the consolidated company was called the International & Great Northern Railroad Company, and that "from about the 1st of January, 1874, the consolidation, merge and mingling, has been perfect as one road," and that "the road's assets, franchises and effects, and capital stock of the two companies, were from that time claimed, owned and used by the consolidated company."

It was further agreed that Paul Bremond, in 1870, subscribed for one thousand shares of one hundred dollars each, in the stock of the Houston & Great Northern Railroad Com-

pany, and paid all calls made on him therefor, amounting to $40,000 "paid up," by the 24th day of November, 1871.

Bremond protested against the consolidation repeatedly, verbally and by letter.

The International Railroad Company was an incorporation under act of the legislature of Texas, of 5th of August, 1870, "and it was agreed that the only section of its charter, referring to the subject matter of this suit," is section 14, which does not seem to give that company the power to consolidate.

The directors of the Houston & Great Northern Railroad in 1872 and 1873, and at time of consolidation, were W. E. Dodge, Wm. M. Rice, G. A. Grow, Moses Taylor, Jacob S. Wetmore, C. Ennis, W. J. Hutchins, W. W. Phelps and C. E. Noble, until his resignation in September, 1873.

At a meeting of the board of directors, on the 19th of February, 1872, in New York city, at which appellants Taylor, Dodge, Wetmore and Rice were present, there was adopted an agreement to consolidate the Houston & Great Northern Railroad Company with the International Railroad Company, and the officers were directed to execute the same, when the International should adopt them.

The articles of agreement began by suggesting the expediency of getting further legislative enactment to authorize consolidation, and postponed the consummation of it until such legislation could be obtained, or the impossibility of obtaining it ascertained; "but in the meantime, the interest of the two companies shall be considered one interest, and managed in view to such consolidation."

From that date the administration of the two companies should be one, each board to retain its own existence, the direction of the business of the two companies to be in the hands of a joint board.

The basis of consolidation was, that the stock of each company was to be called in and cancelled, and $5,000,000 of stock of the consolidated company issued to represent property of every description belonging to the joint companies, and divided

by giving to the stockholders of the International twenty-three thousand four hundred and thirty shares, and to the Houston & Great Northern Railroad Company twenty-six thousand five hundred and seventy shares.

From that date the earnings of the two companies should be considered as belonging to the joint companies, and the expenses as joint expenses, but the accounts and management of the funds should be directed as theretofore by the officers of the respective companies, until permanent consolidation was effected.

This agreement was signed by J. Sandford Barnes, president of the International, and defendant Grow, as president of the Houston & Great Northern Railroad Company.

The agreement was adopted, subject to the rejection of their stockholders, by a three-fourths vote.

Defendant Grow, in behalf of defendants, testified he was the president of both of the companies in the years 1872 and 1873, and up to the time of consolidation, and was president of the consolidated company from its existence till July, 1874. He never heard any talk of consolidation until he went to New York, immediately before the meeting of February 19, 1872.

The agreement of the 19th of February, 1872, was signed by him as president of the Houston & Great Northern Railroad Company, by direction and order of the board of directors. The articles in effect were an agreement for pooling the earnings of the two roads, and providing for operating them as one road, expenses to be joint expenses, receipts to be joint receipts, with one set of officers so as to save expenses of two. This agreement was entered into by the directors of the Houston & Great Northern Railroad Company, at a directors' meeting in the city of New York. Separate accounts were, however, to be kept by each road, until the two roads were actually consolidated, and the accounts were so kept. So soon as the agreement was executed, it was shown to the stockholders present, and to those in New York, for their approval.

Nothing was done under the agreement until the assent to it by the stockholders, as reported to the stockholders' meeting in December, 1872. He showed the agreement to Mr. Bremond, and after reading it through, he expressed his disapproval and refused to give his assent. He had afterwards different conversations with Bremond, and he in all of them expressed his opposition to the consolidation. The two roads were run and operated under this agreement from about April 1, 1872, till September 27, 1873: "By changing the line of the road so as to intersect the International at or near Palestine, we cut off competition of the Trinity boats, and by making this agreement, competition between the two roads was prevented; and by using fifty miles of the track of the International we were enabled to reach Tyler much earlier, and saved three-fourths of a million of dollars in outlay. Many of the stockholders were common to both roads, and others thought consolidation better to avoid expense and competition, and because of the lack of power to make a legal consolidation, they entered into this pooling business."

On all these considerations, the directors of the Houston & Great Northern Railroad Company thought it wise, and thinking that they had no power to consolidate made this arrangement, intending to consolidate when they could.

Grow further testified that "at the time of the agreement by the directors, of February 19, 1872, to consolidate the Houston & Great Northern Railroad Company, we had run a line east of the line to Palestine, and this line was changed by the directors with the view of consolidating with the International, which, for reasons here given, they thought desirable. We built the road to Palestine before submitting the articles of agreement to consolidate, made by the directors to a stockholders' meeting; never reported it to a stockholders' meeting until December, 1872, and the road was then built to Palestine. If consolidation was had, it was better to build to Palestine. If it had not been consolidated, that eastern line would have been built."

On the 29th of August, 1872, this board of directors, acting with the directors of the International Railroad Company, constituting a "joint board," decided to issue bonds to $10,000 per mile, the principal and interest of each company to be guaranteed by the other company.

On July 15, 1873, the board of directors, present defendants Grow, Dodge, Rice, Ennis and Wetmore, passed a resolution accepting an act of the legislature of Texas, of May 8, 1873, entitled "An act to consolidate the Houston Tap & Brazoria Railway, the Huntsville Branch Railway, and Victoria & Columbia Railway with the Houston & Great Northern Railroad."

At the same meeting, the directors drafted and approved articles of consolidation of the capital stock and franchises of the Houston & Great Northern Railroad Company, with the capital stock and franchises of the International Railroad Company, subject to the ratification of the stockholders. They gave to the consolidated company the name of International & Great Northern Railroad Company, and conveyed to and vested in that company all the debts, effects, franchises, etc., of the two companies.

At the same meeting, they appointed three of their number, defendants Dodge, Taylor and Rice, a committee to name the members of the board of directors of this new company, who, on September 16, 1873, reported to the board of directors the names of all the board of the Houston and Great Northern Railroad Company, themselves included, as a part of the board of the new company.

On the 2d of September, 1873, the board of directors called a special meeting of the stockholders of the Houston & Great Northern Railroad Company to convene September 27, 1873, to consider the proposition of consolidating said road with the "International," under authority of the act of the legislature of May 8, 1873.

At this special meeting of the stockholders defendant Grow presided, and out of the sixty thousand shares of the company,

there were present forty-four thousand five hundred and forty-seven, of which all but twenty-five voted for the consolidation, merging the Houston & Great Northern Railroad Company with the International, and vesting all its assets in the new company. Bremond sent his protest to the meeting. At the conclusion it was resolved that until the organization of the new board the control and management of the two companies were continued as at that time. The defendants were named as a part of the new board.

At the annual meeting of the stockholders, December 22, 1873, the proceedings of the special meeting of September 27, 1873, were approved, and the articles of consolidation ordered printed, and it was again resolved that the management of the companies shall continue as at present, until the organization of the new board.

At the time the articles were made by the directors, on July 15, 1873, defendant Grow was president of both companies.

The basis of this consolidation of July, 1873, was, that the assets of the two companies should be represented by fifty-five thousand shares, thirty thousand of which the stockholders of the Houston & Great Northern Railroad Company were to get, and twenty-five thousand the stockholders of the "International."

It was agreed that the defendant directors were the directors of the Houston & Great Northern Railroad at and up to the consolidation, and that they were a part of the board of the consolidated company, which, after consolidation, as directors of the consolidated company, took possession of the assets, franchises and effects, and managed and controlled both roads and their assets as one company, called the "International & Great Northern Railroad Company," and that this was fully consummated on January 1, 1874.

On the 21st of July, 1874, the board of directors of the International & Great Northern Railroad Company resolved that the $5,500,000 of the capital stock of the consolidated company be executed, issued and distributed to the several stock-

holders of the two companies, at par, in exchange for the stock in the respective companies, on the basis of the agreement of February 19, 1872, instead of the agreement of July 15, 1873, voted on and passed by the stockholders as the basis of consolidation. The latter dividing the stock in the proportion of twenty-five thousand to thirty thousand, the former in the proportion of twenty-three thousand four hundred and thirty to twenty-six thousand five hundred and seventy.

The record does not contain any evidence of Bremond's protest against consolidation with the Houston Tap & Brazoria Railroad Company.

The action of the court below in precluding defendants from showing the real value of the assets of the Houston & Great Northern Railroad Company, is apparent from the opinion.

*Thos. G. Shearman*, with *Baker & Botts*, and *Ballenger, Jack & Mott*, for appellants.

I. The defendants, William E. Dodge, J. S. Wetmore, Cornelius Ennis, Moses Taylor, William M. Rice and Galusha A. Grow, as to them, say: "The judgment is erroneous, because the testimony does not show that they, as directors, did any act which of itself could or did affect the plaintiff's rights as a shareholder in the Houston & Great Northern Railroad." The claim to recover back the money paid by plaintiff, upon the ground that the subscription for stock was rescinded, is unquestionably a cause of action against the Houston & Great Northern Railroad Company, as a corporation, and against no one else. The directors of the corporation, as individuals, could not rescind this contract. By their votes, they might bring about such action of the corporation as would rescind, or entitle the plaintiff to rescind, the contract; but any act which had this effect must, of necessity, be the act of the corporation itself. "An action for injuries caused by misconduct of directors must be brought in the name of the corporation, unless such corporation or its officers, upon being applied to for such a purpose by a stockholder, refuse to bring such action.

In that contingency, and then only, can a stockholder bring an action for the benefit of himself and others similarly situated, and in such an action the corporation must necessarily be made a party defendant.    When a stockholder brings such an action the complaint should allege that the corporation, on being applied to, refuses to prosecute; and as this averment constitutes an essential element of the cause of action, the complaint is defective and insufficient without it." Greaves *v.* Gouge, 69 N. Y., 154; Smith *v.* Hurd, 12 Metc., 371; Allen *v.* Curtis, 26 Ct., 456;  Peabody *v.* Flint, 6  Allen, 52;  Craig *v.* Gregg, 83 Pa. St., 19; Hodsdon *v.* Copeland, 16 Me., 314; Rich *v.* Shaw, 23 Me., 343; Smith *v.* Poor, 40 Me., 415.   We call attention to the principle upon which these decisions are based, to wit, that a stockholder  has no direct ownership in any part of the corporate property.    All that he has is "a  limited  and qualified right to participate in a certain  proportion in  the benefits of  a  common  fund, vested in  a  corporation  for the common use."   *(a)*  "All sums which could be recovered " for "injury done to the capital stock by wasting and  diminishing its value, * * *  would be assets of the corporation; and  it would be only after the debts were paid, and in case a surplus should remain, that the stockholders would  be  entitled  to receive anything."    Shaw, C. J., Smith *v.* Hurd, 12 Metc., 371.   *(b)*  " A shareholder in a corporation has no legal title to the property or profits of the corporation until a division is made."   Hyatt *v.* Allen, 56 N. Y., 553,  557.   *(c)*  "The individual members of the corporation are, no  doubt, interested  in  one  sense in the property of the corporation, but in no legal sense are the individual members  the owners."    The Queen *v.* Arnaud, 9 Q. B., 806, 817.   *(d)*  " A shareholder has no  interest in the property as such, or the  profits  as  such."   Brown *v.* Collins, L. R., 12 Eq., 586, 594; to same effect, Van Allen *v.* Assessors, 3 Wall., 573, 584;  Utica *v.* Churchill, 33 N. Y., 228;  Bates *v.* McKinley, 31 Beav., 280.

II. The plaintiff  cannot in  one  action recover  judgment against the corporation upon a cause of action for which it alone

is responsible, and at the same time by showing that its assets have all been converted by the directors, compel them to apply the proceeds to the payment of his judgment. Public Works v. Columbia College, 17 Wall., 521; Jones v. Green, 1 Wall., 330; Stewart v. Fagan, 2 Woods, 215; Marsh v. Burroughs, 1 Woods, 463; Crippen v. Hudson, 13 N. Y., 161; Reubens v. Joel, id., 488; Miller v. Miller, 7 Hun, 208; Hargrove v. Baskin, 50 Miss., 194; Haggerty v. Nixon, 26 N. J. Eq., 42; Davis v. Dean, id., 436; Ballou v. Jones, 13 Hun, 629; Briggs v. Oliver, 68 N. Y., 336; Claflin v. French, 28 N. J. Eq., 383; Griffin v. Nitcher, 57 Me., 270; Dewey v. Eckert, 62 Ill., 218; Newman v. Willetts, 52 Ill., 98; Weightman v. Hatch, 17 Ill., 281; Manchester v. McKee, 9 Ill., 511; M'Dowell v. Cochran, 11 Ill., 31; Heacock v. Durand, 42 Ill., 230; Hall v. Joiner, 1 So. Car., 186; Cubbedge v. Adams, 42 Geo., 124; Peyton v. Lamar, id., 131; Armstrong v. Keifer, 39 Ind., 225; Henderson v. Brooks, 3 N. Y. Supreme Ct., 445; Voorhees v. Howard, 4 Abb. App., 503; Bassett v. St. Albans Co., 47 Vt., 313; Tyler v. Peatt, 30 Mich., 63; Farned v. Harris, 11 Smedes & M., 366; Wright v. Petrie, 1 Smedes & M. Ch., 282; Dick v. Truly, id., 557; Scott v. Wallace, 4 J. J. Marsh., 654; Anderson v. Bradford, 5 J. J. Marsh., 69; Dana v. Banks, 6 J. J. Marsh., 219; Wooley v. Stone, 7 J. J. Marsh., 302; Parish v. Lewis, 1 Freeman (Miss.) Ch., 299; Screven v. Bostick, 2 McCord (S. C.) Ch., 410; Clark v. Banner, 1 Dev. & B. (N. C.), 608; McDermot v. Blois, R. M. Charlt. (Ga.), 281; Steward v. Stevens, Harr. (Mich.), 169; Rhodes v. Cousins, 6 Rand. (Va.), 188; West v. M'Carty, 4 Blackf. (Ind.), 244; Smith v. Thompson, 1 Walker (Mich.), 1; Barrow v. Bailey, 5 Fla., 9; Young v. Frier, 9 N. J. Eq., 465; Stone v. Manning, 3 Ill., 530; Maynard v. Hoskins, 9 Mich., 485; Grimsley v. Hooker, 3 Jones (N. C.) Eq., 4; Rice v. Barnard, 20 Vt., 479.

The same rule prevailed in Alabama, Tennessee and Massachusetts until altered by statute. Reynolds v. Welch, 47 Ala., 200; Roper v. M'Cook, 7 Ala., 318; Morgan v. Crabb, 3

Porter (Ala.), 470; M'Nairy *v.* Eastland, 10 Yerg. (Tenn.), 310; Taylor *v.* Robinson, 7 Allen (Mass.), 253.

III. If the petition could be construed as making out a case in which the directors had exceeded the powers conferred upon them by the charter, and the action should be considered as brought by the plaintiff as a stockholder, on behalf of other stockholders, it would still be fatally defective for want of any averment that application has been made to the corporation itself to sue, and that it has refused to do so; or that the corporation is entirely under the control of the directors in fault, and that they have some personal interest in sustaining their transactions *ultra vires*, which makes it morally impossible that they should permit the corporation to bring an action to set those transactions aside. 1. In England, it is held that the corporation must be made a party plaintiff, leaving the court to ascertain whether the corporate name ought to be used without the consent of the directors. Duckett *v.* Gover, 6 Ch. Div., 82; McDougall *v.* Gardiner, 1 Ch. Div., 13; Gray *v.* Lewis, L. R., 8 Ch., 1035. 2. In America, this rule is so far modified as to permit a stockholder to bring suit in equity on behalf of all similarly situated, making the corporation a defendant, and averring that the corporation itself is prevented from suing by the directors in charge. But some averment of this kind is vital to the cause of action. Memphis *v.* Dean, 8 Wall., 64; Greaves *v.* Gouge, 69 N. Y., 154; Brown *v.* Vandyke, 8 N. J. Eq., 795; Wilkie *v.* Rochester, etc., R. Co., 12 Hun, 242; Brewer *v.* Boston Theatre, 104 Mass., 378.

IV. It is well settled that directors, as well as other trustees, will be protected from responsibility for everything except profits made by them personally, even when they exceed their powers, and violate the charter of their corporation, if "it was a question on which, with all due care, they might have made an honest mistake," and especially if it appears " that they acted throughout by the advice of their counsel." Spering's Appeal, 71 Pa. St., 11; Hodges *v.* New England

Screw Co., 1 R. I., 312; Lexington, etc., R. R. Co. v. Bridge, 7 B. Mon., 556; Godbold v. Branch Bank, 11 Ala., 191; Turquand v. Marshall, L. R., 4 Ch., 386; Attorney General v Exeter, 2 Russ., 45.   Compare Robinson v. Smith, 3 Paige, 222, 231.

V. The only cause of action which dissenting stockholders have, upon an *ultra vires* act, is in equity, and to compel restitution *to the corporation*, and not to themselves.   That is exactly what is decided by the cases cited by the appellee, and which we give below.   Dodge v. Woolsey, 18 How. (U. S.), 342; Solomon v. Laing, 12 Beav., 339; Kean v. Johnson, 1 Stockton, 407; Goodin v. Cincinnati, etc., Canal Co., 18 Ohio St., 169; Abbot v. Amer. H. R. Co., 33 Barb., 578; Jackson v. Ludeling, 21 Wall., 624; Robinson v. Smith, 3 Paige, 222; Taylor v. Miami Exporting Co., 5 Ohio, 168.

VI. " The court erred, as shown in bill of exceptions, in refusing to allow defendants to prove that the estimated value of lands and county bonds, as set forth in the ' Statement of Assets and Liabilities,' made by the directors to the stockholders, was made without regard to the then market value of said assets, and that in fact said assets were then worth in the market far less than estimated in said report, because this was a question between parties in interest — between the owners;  *  *  * it was competent for defendants to show that said values were in fact overestimated at the time, and were not intended as an estimate of the then market value of said assets." This evidence was excluded upon the sole ground that the statement of assets and values contained in the report put in evidence was conclusive.   No other objection to the evidence can now be raised.    Marston v. Gould, 69 N. Y., 220, 228.   The only argument offered in support of this ruling is that " this estimate of assets was embraced in " a report which " was offered by the defendants as a part of the agreed facts, and was their own testimony, which they should not impeach."   " The party calling a witness is not precluded from proving the truth of *a particular fact* by any other competent testimony, in direct contra-

diction to what such witness may have testified; and this, not only when it appears that the witness was innocently mistaken, but even when the evidence may collaterally have the effect of showing that he was generally unworthy of belief." Thompson *v.* Blanchard, 4 N. Y., 303, 311; Coulter *v.* American Express Co., 56 N. Y., 585, 589; to same effect, U. S. *v.* Watkins, 3 Cranch C. C., 441; Brannon *v.* Hursell, 112 Mass., 63; Stockton *v.* Demuth, 7 Watts, 39; Spencer *v.* White, 1 Ired. Law (N. C.), 236; Bradford *v.* Bush, 10 Ala., 386; Brown *v.* Wood, 19 Mo., 475; Norwood *v.* Kenfield, 30 Cal., 393; Wolfe *v.* Hauver, 1 Gill, 84; Swamscot Co. *v.* Walker, 22 N. H., 457.

VII. "The court erred in rendering judgment for the plaintiff, because, from his knowledge of the agreement to consolidate, and the intention of the two companies to consolidate, and the non-action of the plaintiff in taking steps to prevent it until two years after the consolidation, and when it was impossible to separate their interests, the plaintiff is now estopped from complaining of said consolidation." The plaintiff's delay for three years to bring any suit is a bar to his claim. Mere protests, however continuous, will not suffice. "The continual assertion of a claim, unaccompanied by any act to give effect to it, will not keep alive a right which would otherwise be precluded." Clegg *v.* Edmondson, 8 De Gex, M. & G., 787. Three years delay in filing a bill to compel directors to refund moneys used *ultra vires*, held sufficient reason for dismissing the bill entirely. Stupart *v.* Arrowsmith, 3 Smale & Giff., 176. Two years delay, in a similar case, held fatal. Burt *v.* British Nation, etc., Society, 4 De Gex & Jones, 158; Peabody *v.* Flint, 6 Allen, 52. A less period held a bar to equitable relief. Graham *v.* Birkenhead, etc., R. Co., 2 Macn. & G., 146; Great Western R. Co. *v.* Oxford, etc., R. Co., 3 De Gex, M. & G., 341.

VIII. The general power given to the Houston Tap Company to consolidate with any other railroad company, conferred an implied power upon every railroad corporation which might subsequently be created in Texas to consolidate with the Hous-

ton Tap Company, even though the charter of the other corporation contained no clause authorizing it to consolidate. Tomlinson *v.* Jessup, 15 Wall., 454; Schenectady, etc., P. R. Co. *v.* Thatcher, 11 N. Y., 102; Buffalo, etc., R. Co. *v.* Dudley, 14 N. Y., 336, 348; White *v.* Syracuse, etc., R. Co., 14 Barb., 559; Suydam *v.* Moore, 8 Barb., 258; Inland Fisheries *v.* Holyoke Co., 104 Mass., 446; State *v.* Maine, etc., R. Co., 66 Me., 488; Pacific R. Co. *v.* Renshaw, 18 Mo., 210. If it is said that corporations are only subject to *general* laws antedating their creation, and that the act of September 21, 1856, was a private law for the incorporation of a single company, we answer that the decision in the Prospect Park Railroad case (67 N. Y., 371), already cited, expressly holds that such a consolidation clause as was contained in the act of September 21, 1856, is general, and applies to all railroad companies. And it is well settled that a statute may be private and local in its main scope and design, and yet be general in some one or more sections, and that by reason of those sections it is to be regarded for all purposes as a general law. Bretz *v.* New York, 6 Robertson, 325; State *v.* Lean, 9 Wis., 279, 288; Clark *v.* Janesville, 10 Wis., 136, 178; Rochester *v.* Alfred Bank, 13 Wis., 432, 437; Heridia *v.* Ayres, 12 Pick., 334, 344; Rogers' Case, 2 Me., 303; White *v.* Syracuse, etc., R. Co., 14 Barb., 559, where a statute empowering a single company to borrow of all other railroad companies was held to be general and public. The omission of the plaintiff to distinctly object to the consolidation with the Houston Tap Company is sufficient to make that binding upon him, whether he affirmatively consented or not. In such a case stockholders are bound to protest distinctly and earnestly, or they will be bound by the action of the majority. Watts' Appeal, 78 Pa. St., 370, 394. The burden of proof is upon the plaintiff to prove his dissent and protest. North Carolina R. Co. *v.* Leach, 4 Jones Law, 340; Martin *v.* Pensacola R. Co., 8 Fla., 370. And, moreover, the plaintiff was bound to commence proceedings promptly to prevent or set aside this consolidation, if he objected to it. Mere

protests, even though continual, are not enough.    Clegg *v.* Edmondson, 8 De Gex, M. & G., 787; Watts' Appeal, 78 Pa. St., 370, 394.

IX. *The plaintiff was not, in any case, entitled to recover damages payable to him personally.*

The consolidation of the two companies was either authorized by a constitutional law, or it was not.   If it was so authorized, the plaintiff has, of course, no right to complain, and has no cause of action against either the corporation or its directors.   If it was not so authorized, then the consolidation which was attempted was absolutely void, and the plaintiff was not entitled to rescind his contract of subscription, nor to recover damages for his own use, but was entitled simply and only to a judgment declaring the consolidation void, and directing the parties to whom the assets of the Houston & Great Northern Company had been transferred to restore them to that company.   Changes in the form or business of a corporation which are *ultra vires* do not release a subscriber to stock.   His only remedy is to restrain or vacate the unlawful proceeding, and confine the corporation within its proper limits.    Hays *v.* Ottawa R. Co., 61 Ill., 422; Central P. R. Co. *v.* Clemens, 16 Mo., 359, 366; Ottawa R. Co. *v.* Black, 79 Ill., 262, 268; Mississippi R. Co. *v.* Cross, 20 Ark., 443, 452; Danbury, etc., R. Co. *v.* Wilson, 22 Conn., 435; *Ex parte* Booker, 18 Ark., 338; Conn., etc., R. Co. *v.* Bailey, 24 Vt., 465, 476.   See New Orleans R. Co. *v.* Harris, *supra;* Mississippi R. Co. *v.* Gaster, 24 Ark., 97.   Having shown, as we submit, that the plaintiff was not entitled to recover any damages on the ground of rescission of his subscription, we respectfully insist that he cannot recover any damages for his own use, on the ground that assets of the company had been misapplied.  ˙The only party which, upon a construction of the evidence most favorable to the plaintiff, could recover anything, was the Houston & Great Northern Railroad Company.   If its funds had been wasted and its assets misapplied, the judgment should have directed restitution to be made to it.   The plaintiff personally could not recover

damages for an injury done to the company. Greaves *v.* Gouge, 69 N. Y., 154; Robinson *v.* Smith, 3 Paige, 222; Smith *v.* Hurd, 12 Metc., 371; Allen *v.* Curtis, 26 Conn., 456; Craig *v.* Gregg, 83 Pa. St., 19.

*Hutcheson & Carrington* for appellee.

I. The consolidation of the Great Northern R. R. Co., of which plaintiff was a stockholder, with the International R. R. Co., on January 1, 1874, was *ultra vires* the charter under which he became a stockholder. Green's Brice's Ultra Vires, ·516, 538, and note on pp. 539 to 545; 2 Red. on Railways, § 252, note 5; 4th ed., p. 575; 5th ed., p. 589; Field on Corporations, §§ 426, 429; Peoria *v.* Mad. & I. R. R. Co., 21 How., 441; Clearwater *v.* Meredith, 1 Wall., 25; Kean *v.* Johnson, 1 Stock., 401. The testimony shows that this. consolidation was procured by the directors, and all the assets, franchises and effects of the H. & G. N. R. R. Co. were transferred by them to the new company without compulsion, thereby destroying his property.

II. The facts show that all the acts promoting the consolidation had their origin with the directors, and, being outside of corporate powers of the company, could not be ratified. Green's Brice's Ultra Vires, 570, 462, and note, 411, 412; 1 Red. on Rail., § 130, p. 515, 4th ed.; Angell & Ames on Corp., § 393; Dodge *v.* Woolsey, 18 How., 343, 344; Peterson *v.* Mayor of N. Y., 17 N. Y., 454.

. III. A part of the stockholders of a company have no power to take the property of the company from the hands of others; and no majority, however large, undertaking to do so, would discharge the directors of their trust to preserve the assets for all the stockholders. Field on Corporations, § 152, p. 170, § 155 (Dayton R. R. Co. *v.* Hatch, 1 Disney, 84); Perry on Trusts, §§ 285, 291; 922, 926–928; Green's Brice's Ultra Vires, 79, 339–40, note *; also p. 516; Hill on Trustees, 863–869; Gashwiler *v.* Willis, 33 Cal., 19, 23; Kean *v.* Johnson, 1 Stock., 407; Black *v.* Del. & R. C. Co., 9; C. E. Green, 455; Dana *v.*

8

Bank of U. S., 5 Watts & Serg., 256; Bank of U. S. *v.* Dandridge, 12 Wheat., 113; Abbott *v.* Am. H. R. Co., 33 Barb., 582–3, 591; Conro *v.* Port Henry Iron Co., 12 Barb., 27; Peabody *v.* Flint, 6 Allen, 55–56; Brewer *v.* Boston Theater, 104 Mass., 378; Lauman *v.* Lebanon Valley Bank, 30 Pa. St., 42.

IV. Before any majority could accomplish such diversion, they must have paid Bremond the value of his interest, to recover which he was therefore entitled to bring his suit against the directors and the receiving companies. Field on Corporations, § 155; Green's Brice's Ultra Vires, 542; Pierce on Am. Railroad Law, 89, note; Lauman *v.* Lebanon Valley Bank, 30 Pa. St., 46; Black *v.* Del. R. C. Co., 9; C. E. Green, 455.

V. It is not necessary to show actual fraud on the part of the directors; the unauthorized disposition and appropriation of the assets by them was a breach of trust which does not *admit* of an inquiry into actual bad faith or evil intention. Story's Eq. Jur., §§ 258, 307, 322; Aberdeen Railway Co. *v.* Blakecy, 1 Macq., 461; G. & S. R. R. Co. *v.* Kelly, 77 Ill., 434–5; Dobson *v.* Rauny, 3 Sandf. Ch., 62; Solomon *v.* Laing, 6 Eng. Rail. Ca. (308), 236; 29 Cal., 19; 25 Wis., 552; 43 N. H., 453; 1 R. I., 212; San Diego *v.* San Diego Railway Co., 44 Cal., 115, 117; Abbott *v.* Am. H. R. Co., 33 Barb., 594.

VI. It is a breach of trust towards a stockholder in a joint stock incorporated company, established for a certain definite purpose by its charter, if the funds or credit of the company are diverted from such purpose, although the misapplication be sanctioned by a vote of a majority of the stockholders. Field on Corporations, §§ 172, 173; Dodge *v.* Woolsey, 18 How. (U. S.), 342, 347; Solomon *v.* Laing, 6 Eng. Rail. Ca., 231; Kean *v.* Johnson, 1 Stock., 407, 413, 417; Jackson *v.* Ludeling, 21 Wall., 624; Goodwin *v.* Cin. & W. C. Co., 18 Ohio St., 51; Abbott *v.* Am. H. R. Co., 33 Barb., 592–3.

VII. For this breach of trust in diverting the funds from the chartered purposes of the company, and receiving the converted assets themselves, the dissenting stockholders have a

cause of action against them and the company participating with them in the conversion and breach of trust. Angell & Ames on Corp., §§ 312, 392; 393, note 1; Hill on Trustees, [520]–[524]; Field on Corporations, §§ 172, 173, 398, 431; Solomon *v.* Laing, 6 Eng. Rail. Ca., 236; Opinion of Lord Langdale; Taylor *v.* Miami Exporting Co., 5 Hammond, 168; Kean *v.* Johnson, 1 Stock., 424; Dodge *v.* Woolsey, 18 How. (U. S.), 342, 345; Oliver *v.* Piatt, 3 How. (U. S.), 333; Koehlier *v.* Black River Falls Co., 2 Black (U. S.), 915–16; Jackson *v.* Ludeling, 21 Wall., 624–635; Robinson *v.* Smith, 3 Paige Ch., 231; Spearing's Appeal, 71 Pa. St., 23; Bissell *v.* The M. & S. R. R. Co., 22 N. Y., 275; Watts' Appeal, 78 Pa. St., 370; Peabody *v.* Flint, 6 Allen, 56, 57; Frothingham *v.* Borneh, 6 Hun, 366; Dykeman *v.* Valierte, 42 N. Y., 549.

VIII. The act of May 8, 1873, neither directly nor by implication gave any power to the Houston & Great Northern Railroad Company to consolidate with the International Railroad. Central R. R. Co. *v.* Georgia, 2 Otto, 674–676; Tomlinson *v.* Branch, 15 Wall., 460; Phil. & Wil. R. R. Co. *v.* Balt. & O. R. R. Co., 10 How., 376; The Delaware R. R. Tax, 18 Wall., 226–228; Morgan *v.* Louisiana R. R. Co., 3 Otto, 217; Campbell *et al. v.* M. & C. R. R. Co., 23 Ohio St., 189; State *v.* Greene Co. *et al.*, 54 Mo., 551–2; Moran *v.* Com. Miami Co., 2 Black (U. S.), 916; Black *v.* D. R. R. C. Co., 9 C. E. Green, 474; Commonwealth *v.* E. & N. R. R. Co., 3 Casey, 351; Townsend *v.* Brown, 4 Zab., 87; Gould *v.* Langdon, 43 Pa. St., 365; Joint Cos. *v.* R. & B. D. R. Co., 1 C. E. Green, 372, 436; 7 Harris, 218; 9 Harris, 22; Penn. R. R. Co. *v.* Canal Co., 21 Pa. St., 43.

IX. If such was the effect of the act of May 8, 1873, the legislature had no power, any more than the stockholders, to effect a consolidation till plaintiff had consented, or been paid the value of his interest, for it was a change of the fundamental purposes of the company. The original charter was passed the 22d of October, 1866, and defendant subscribed in

1870, and paid in $40,000 before November 24, 1871. Field on Corporations, §§ 428–431; 2 Redfield on Rail., § 221, note 12; 4th ed., pp. 332–333, and § 252, note 5; Lauman *v.* Lebanon Valley Bank, 30 Pa. St., 47; Bailey *v.* State, 16 Ind., 46; Nashville R. R. Co. *v.* Jones, 2 Cold. (Tenn.), 564; New Orleans R. R. Co. *v.* Harris, 27 Miss., 474; Black *v.* Del. R. R. Co., 9 C. E. Green, 466; Chapman *v.* Mad. C. R. R. Co., 6 Ohio St., 137.

X. The directors had no right to accept the act of May 8, 1873, nor did the stockholders, unless it was unanimous. Field on Corp., p. 173, § 155; N. O. & J. R. R. Co. *v.* Harris, 27 Miss., 474.

XI. Both the amount of money contributed by plaintiff, and the value of the assets of the company at the time of the consolidation, and the value of the stock before it was influenced by the consolidation, justify the amount of the judgment. Plaintiff subscribed for $100,000 of stock in the Houston & Great Northern Railroad Company, and paid all calls made on him, amounting to $40,000, by September 24, 1871. The assets of the Houston & Great Northern Railroad Company consisted of *sundry assets:* $2,863,330; two hundred and fifty-two miles of road, costing $7,560,000, and $3,600,000 of unpaid subscription, but as this was released he did not think it worth anything. The aggregate liabilities chargeable to the Houston & Great Northern Railroad Company were: floating, $1,360,-249.11; first mortgage bonds, $4,032,000, besides the *convertible* bonds issued by the *joint board* of the two companies, and guaranteed by each, and $1,450,000 of these bonds were never sold, and still counted as assets of the company. The report of the directors to the stockholders, of· December 22, 1873, stated a "surplus of assets over liabilities" of $4,110,995, belonging to the two companies, but the witness Grow said he regarded these assets as overstated, and would not bring that price in the market. He then stated that the two·hundred and fifty-two miles of road and equipments, costing $7,560,000, would absorb the $2,400,000 paid in on the stock subscription,

the $4,032,000 of first mortgage bonds, which sold at eighty cents, and only realized $3,225,600, or would leave a balance of $1,934,400 to be raised from the balance of the $3,600,000 due on the stock and the sale of the second mortgage bonds, and net earnings of the road. Since the consolidation there has been built on the International line eighty miles of road; none has been built on the Houston & Great Northern line. Witness Grow did not know what has been done with the earnings of the Houston & Great Northern since the consolidation.

Gould, Associate Justice.— It is the opinion of the court that the consolidation of the Houston & Great Northern and the International railroad companies was unauthorized and wrongful as to Bremond, an objecting stockholder of the former company, and having been consummated by a wrongful appropriation of his equitable interest by the consolidated company, that company became equitably liable to him therefor. All of the members of the court have not reached the conclusion that the consolidation was unauthorized, from the same premises and by the same process of reasoning, and it is not proposed to enter into an explanation of the reasons for that conclusion, further than to say: that we are all agreed, that the two railroad enterprises differed so widely in their starting points, their routes and the region of country to be traversed, that an original subscriber to the Houston & Great Northern might well object that he had not agreed to or authorized such a union; nor had he, by failing to object to a subsequent enlargement of the charter, which, whether it actually gave such power or not, did not on its face purport to give any power to consolidate, precluded himself from objecting to a consolidation making so fundamental a change in the objects of the corporation. Nugent *v*. Supervisors, etc., 19 Wall., 241; Angell & Ames on Corp., sec. 391 *et seq*., and authorities cited.

Speaking for myself only, I will say that the policy of the state to forbid the consolidation of parallel and competing railroads is now declared and enforced by a constitutional pro-

vision. Const., Art. X, sec. 5. In my opinion, that policy had been plainly indicated in 1873 by introducing like restrictions in the numerous railroad charters granted during that year, and it was not the design of the act of May 8, 1873, to depart from that policy and confer an unlimited power of consolidation.

We are further of opinion that the plaintiff is not entitled to the personal judgment against the director recovered by him. The consolidation was the act of the stockholders, other than the plaintiff, and was therefore an act for which the directors, as such, should not be held responsible. As directors they were answerable to the corporation for official delinquencies resulting in damage to the corporate property, but it is not perceived that the corporation could hold them responsible for a consolidation effected, not by them as directors, but effected by the act of the stockholders. The rights of the plaintiff are believed to be to equitable relief, and it does not appear to us, under the circumstances, that equity makes the directors responsible to him. They have not appropriated to themselves, individually, the property of the Houston & G. N. Company, or of the plaintiff, nor have they aided in a technical conversion of plaintiff's property. If, indeed, they had been guilty of such official misconduct as made them responsible to the Houston & G. N. Company, the plaintiff might, perhaps, by an equitable proceeding, enforce that responsibility and get the benefit of his interest therein. But we repeat that we are unable to see that the directors, as such, are responsible to the corporation whose trustees they were, for the consolidation; or that they, as directors, are liable, legally or equitably, to the plaintiff.

Appellants assert that "by his knowledge of what was doing and intended by the company to be done, and his failure to take any steps to prevent it until two years after actual consolidation, during which time the two roads had been run and operated as one road, the plaintiff must be deemed to have acquiesced in the consolidation, notwithstanding he was op-

posed to it, and therefore is estopped from now complaining of it."

We have examined with care the authorities cited in support of this proposition, and, except one case not accessible to us, find that most of them are cases in which a court of equity refused to interfere by injunction to prevent the further prosecution of some enterprise, the refusal being justified on various equitable considerations in connection with the presumption of acquiescence. The mischievous effect of the injunction on the interest of the parties and of others, evils which might have been avoided by an earlier application, have been regarded as giving rise to a counter equity precluding a party from that extraordinary relief. Great West. R. W. Co. v. Oxford, etc., R. W. Co., 3 De Gex., Macn. & G., 341; Graham v. Birkenhead, etc., 2 Macn. & G., 146; Hodgson v. Earl of Poriss, 1 De Gex., Macn. & G., 6; Peabody v. Flint, 6 Allen, 52; Tash v. Adams, 10 Cush., 253.

In Clegg v. Edmonson, cited by counsel, it is to be noted that the plaintiffs were allowed equitable relief, not dissimilar to that sought in this case.   8 De Gex., Macn. & G., 787.

The delay of the plaintiff and the effects of that delay might well preclude him from enjoining the further prosecution of the consolidated enterprise, but not from following up his equitable interest in the hands of a corporation, which, by appropriating it without authority and by assuming the place and obligations of the Houston & G. N. R. Co., became equitably bound to compensate him therefor. Goodin v. C. & W. Canal Co. et al., 18 Ohio St., 169 ; Chapman & Harkness v. Mad River, L. E. etc., 6 Ohio St., 119.

A stockholder may be estopped by his conduct from further objecting to a consolidation which was attempted without authority; but in the present case the conduct and action of Bremond have not, in our opinion, been such as to preclude him from still refusing to go into the new enterprise, or from demanding full compensation for his interest in the old.

The consolidation, if illegal when attempted, has since been

recognized by law, and for the purposes of this case must be regarded as an accomplished fact.

The enterprise in which the plaintiff embarked being at an end, he became entitled to receive his interest in the assets of the Houston & G. N. Railroad Co., remaining after payment of the corporate debts, and to demand it of the consolidated corporation which had assumed the place and liabilities of that company, and had appropriated its assets. Lauman *v.* Lebanon R. Co., 30 Pa. St., 42; Black *v.* Delaware, etc., R. Co., 9 C. E. Green, 465.

Appellants claim that the value of that interest was indicated by the market value of the stock, and that Bremond's recovery should have been limited to that market value. It appears, however, that the subscribers to the Houston & Great Northern Railroad Company were not entitled to stock certificates until their subscriptions were fully paid, and that only forty per cent. of the subscription had been called for or paid by any subscribers, and consequently no stock had issued. In this state of affairs it might well be that sales by subscribers were too rare to give the stock a market value. The inquiry should have extended to the actual value of stock, and as tending to show that value, the defendants were at liberty to show the true assets and liabilities of the Houston & Great Northern Railroad Company. It appears by bill of exceptions that an official statement of those assets and liabilities, made by the president and directors in 1873, was by agreement read in evidence, and that the court refused to allow defendants to show whether said assets were then worth, or would have brought in the market, the price estimated in the report; the court holding the report conclusive, unless impeached for mistake in the pleadings. This action of the court is one of the errors assigned and urged.

Counsel for appellee replies, that the evidence was in fact introduced, referring to the statement of facts. It does appear that the witness was allowed to state that those assets could not have been sold at the valuation put upon them in the report;

but after this it also distinctly appears in the statement of facts that the witness was not allowed to testify as to the real value of these assets. Construing the bill of exceptions in the light of the statement of facts, we think it apparent that defendants were precluded from showing the real value of the assets of the Houston & G. N. Railroad Co., and we are of opinion that the exclusion of the evidence offered was erroneous. Surely the company or its present representative, the International & G. N. Railroad Co., is not precluded by erroneous estimates of its officials, though embodied in a published report, from showing the true value of its assets. This error of the court necessitates a reversal of the case.

On another trial, the inquiry should be as to the real value of Bremond's equitable interest in the Houston & G. N. Railroad Co., or the real value of his stock at the time the consolidation was practically effected; or at any period thereafter up to the institution of his suit. His recovery should not exceed that value, with interest, from the institution of the suit.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered March 19, 1880.]