(35 Misc. Rep. 616.)

### CUTTING et al. v. BALTIMORE & O. R. CO. et al.

(Supreme Court, Special Term, Richmond County.   July, 1901.)

1. CORPORATIONS—STOCK—MORTGAGE BONDS—INTEREST—GUARANTY—PAYMENT.
    A corporation holding a majority of the stock in an insolvent corporation, and in control thereof, which has guarantied certain mortgage bonds of the corporation, owes the duty to the minority stockholders to pay the interest on such bonds only as the majority stockholder, not as guarantor; its only obligation in that regard being towards the holders of the bonds.

2. SAME—DUTY.
    The duty of paying such interest is conditioned on the possession of the requisite funds from the latter corporation's assets.

3. SAME—DEFAULT—FORECLOSURE—PURCHASE.
    Where a corporation holding the majority of stock in and controlling the affairs of an insolvent corporation allows the interest on mortgage bonds of such corporation, on which it was guarantor, to go unpaid, and actively instigates a foreclosure proceeding based on such default, with the purpose and intent of becoming the purchaser at the sale, and does become such purchaser, title being taken by a new corporation, in which such controlling corporation holds the entire stock, such corporation holds the value of the minority stock in trust for the minority stockholders in. the old insolvent corporation, since such minority stockholders are entitled to whatever chances of value their stock might have in the future.

4. SAME—INCOME BONDS—VALIDITY—ESTOPPEL TO QUESTION.
    Minority stockholders in a corporation having an issue of income bonds outstanding, each of whom has accepted his pro rata share of such issue, are thereby estopped to deny the validity of such issue; creditors only of the corporation in such case being entitled to raise such question.

5. SAME—MINORITY STOCKHOLDERS—RIGHTS.
    Defendant corporation was the majority stockholder in an insolvent corporation, of which it was a creditor, without security, on an open account, and on certain mortgage bonds, of which it was guarantor. Such corporation also had outstanding income bonds, on which nothing had ever been paid. In order to place such corporation on a solvent basis, defendant actively instigated foreclosure proceedings in default of interest on the mortgage bonds, with the intent to purchase at the sale. After judgment of foreclosure, defendant paid the interest, and sale was made to defendant, title being taken in the name of a new corporation, in which it held the entire stock. *Held* that, though defendant was technically wrong in its course to bring about the liquidation, there being nothing to show actual fraud, the minority stockholders in the insolvent corporation were entitled to a transfer of the same number of shares of the new corporation as they held shares in the old, on payment of their pro rata shares of the moneys paid by defendant for interest on such mortgage bonds, subject to defendant's lien for the payment of the minority stockholders' pro rata share of the income bonds and open account.

Action by Robert L. Cutting and others against the Baltimore & Ohio Railroad Company and others.   Judgment rendered.

Blair & Price, for plaintiffs.
Guthrie, Cravath & Henderson, for defendants.

MAREAN, J.   The defendant was owner of the majority of the stock (51 per cent.) of the Staten Island Rapid Transit Railroad Com-

pany, and was in control. It had also guarantied the second mort-gage bonds of that company. As guarantor it had no duty touching the payment of the interest towards minority stockholders. Its only obligation in that regard was towards holders of the bonds. It was only as majority stockholder that it owed to minority stockhold-ers any duty to pay the interest, and that duty was conditioned upon the possession in the assets of the company of the requisite funds.

The defendant was also creditor, without security, of the said com-pany, for a large sum presently due; and while, had defendant chosen, it could, by making default in other directions, have proba-bly paid the interest falling due July 1, 1898, and so have prevented foreclosure, the assets of the company did not, without default else-where, and without defendant's foregoing its own right of payment of its claim, afford the means of paying such interest. The defend-ant allowed such interest to go unpaid, and actively instigated the foreclosure, based upon the default, with the purpose and intent of becoming the purchaser at the sale. After the entry of the judgment of foreclosure, defendant, out of its own funds, paid the interest fall-ing due July 1, 1898, January 1, 1899, and July 1, 1899, and thereupon a sale under the judgment was had indirectly, but really to defendant, the nominal title being taken by a new company, to wit, the Staten Island Rapid Transit Railway Company, defendant taking all the stock, and in lieu of payment of the purchase money the foreclosed bonds were then taken up in exchange for a new issue of the same amount by the new company, bearing interest from July 1, 1899, at 4 per cent. Under these circumstances the defendant holds 49 per cent. of the stock of the new company in trust for the minority stockholders of the old company. At one time I entertained some doubt whether the substantial want of value of the old stock did not lead to a contrary conclusion. But I think not. The minority stock-holders were entitled to whatever chances of value their stock might have in the vicissitudes of the future; and in the most desperate chance there is probably a fractional certainty, however attenuated. But the lack of substantial value is a material fact when the ethical character of defendant's conduct comes to be considered in determin-ing how it shall be treated in connection with the enforcement of the trust. Staten Island Rapid Transit Railroad Company was hope-lessly insolvent. Beyond the first and second mortgages, amounting to $3,500,000, it had outstanding an issue of income bonds amounting to $4,500,000, upon which the company had never been able to pay a penny of interest. $2,332,000 of this issue were held by defendant. Besides, the company was indebted to the defendant on open account, as above mentioned, to the amount of $1,174,032.60. The company had never paid a dividend. It is urged by plaintiff that the income bonds were void, but, each stockholder having accepted his pro rata share of the issue, they are all estopped. Only creditors could have questioned their validity. There is no reason to suppose that the defendant saw any actual value in the property loaded down with these incumbrances, and desired to obtain it for that reason. It is more than probable that it apprehended a necessity, in order to put

it upon anything like a solvent basis, to forgive its own outstanding account, and that all the holders of income bonds would have to forgive their claims. But they could not control the income bonds which they did not hold, and why should they forgive their own claims against the company for the benefit of minority stockholders? I am satisfied that, while the defendant was technically wrong in the course which it took to bring about the inevitable liquidation, and that equity will, therefore, imply a trust, nevertheless it will impose equitable conditions, and not apply those harsh and punitive rules which are appropriate to cases of actual wicked fraud. The plaintiffs are entitled to a transfer of the same number of shares of the new company as they hold of shares in the old company upon payment within 20 days of their pro rata share of the moneys paid by defendant, as above stated, for interest on the second mortgage bonds, subject, however, to defendant's lien for the payment of plaintiffs' pro rata share of the income bonds held by the defendant as above stated, and of the defendant's open account aforesaid; such lien to be secured by pledge with the defendant of the stock transferred. But in case the plaintiffs shall not, within 20 days after the entry and service of an interlocutory judgment for the above relief, make the said cash payment, then the complaint will be dismissed, with costs.

The following simple case illustrates the view which I have taken: Suppose A., who is insolvent, owns a piece of real estate subject to a mortgage, having no other property, and B. holds a second mortgage upon it for an amount without any reasonable doubt largely in excess of the value of the equity. A. goes abroad, leaving B. in charge of the property as general agent. B.'s mortgage falls due, and his interest is in arrears. The income is insufficient to pay interest on the first mortgage unless bills for repairs are allowed to go unpaid, and unless B. foregoes his own interest and principal. B. pays the bills for repairs, and pays his own interest, but allows the interest on the first mortgage to be in default, and instigates a foreclosure, and buys at the sale, which is a fair public sale, in his own name, for just the amount due on the first mortgage and costs, his second mortgage being nominally cut off. Equity probably impresses a trust upon the property in B.'s hands for the benefit of A., though the end reached was the same as would have been reached by a foreclosure of B.'s own mortgage; but must not A. pay B. what B. paid at the sale, and must he not take the land, allowing in some way a lien for the amount due on B.'s second mortgage (so adjusted, of course, that it will be a lien only after an amount equal to the old first mortgage)? The plaintiffs' proposition is that in the case supposed B. must lose his second mortgage altogether, and that A., instead of merely getting back his own, will make a profit. I think equity gives him only indemnity.

Judgment accordingly, with costs. Costs against plaintiffs are awarded to defendants Lewis, Staten Island Rapid Transit Railway Company, and Standard Trust Company.