### EAGLESON v. PACIFIC TIMBER CO. et al.

(District Court, D. Delaware. December 3, 1920.)

No. 394.

1. **Corporations** ☞573(1)—**Reorganization plan must be fair to all stockholders.**

A transfer of the assets of a corporation to a new corporation, as a part of a reorganization plan by which the stockholders of the old company are to have an interest in the new one, will be set aside as fraudulent, unless all stockholders of the same class are allowed to participate on equally favorable terms.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

## 2. Corporations ⊚⟶573 (1)—Reorganization fraudulent in law.

A plan of reorganization adopted by a corporation *held* fraudulent, where holders of common stock who owned no preferred stock were permitted to exchange their stock, share for share, for that of the new company, but those who also owned preferred stock were required, as a condition to such exchange, to exchange their preferred stock for that of the new company, paying in cash a sum equal to its par value, or in effect to buy an equal number of shares of the new preferred stock.

In Equity. Suit by John Eagleson, individually and as executor of the last will and testament of James Bell, deceased, against the Pacific Timber Company and the West Coast Timber Company. Decree for complainant.

Robert H. Richards, and James I. Boyce, both of Wilmington, Del., for plaintiff.

William S. Hilles, of Wilmington, Del., and J. B. Colahan, 3rd, of Philadelphia, Pa., for defendants.

MORRIS, District Judge. The only question of moment necessary to be decided in this suit, the purpose of which is to set aside the sale by the Pacific Timber Company, a Delaware corporation, one of the defendants, of all its assets to the other defendant, West Coast Timber Company, is whether the plan of reorganization of the first-named company which involved such sale was fair or fraudulent as to the minority stockholders of the Pacific Company, of whom the plaintiff is one. The question arises on final hearing of the cause.

The Pacific Company was organized in 1907, with an authorized capitalization of $3,000,000. Its shares of stock, both preferred and common, have a par value of $100 each. By express provision of the charter the holders of the preferred stock became entitled, upon liquidation or dissolution of the corporation, to be paid the amount paid upon their shares before the payment of any amount to the holders of the common stock. About 3,780 shares of preferred stock are outstanding, each of which was paid for in cash at par. The Pacific Company, in keeping with the purpose of its organization, became the owner of timber lands and timber leases in Mexico. Warfare in that country stopped development of those properties in 1911, and has since then not only prevented further development and operations, but has resulted in the destruction of improvements theretofore made for the cutting and sale of the timber. The company is now insolvent; but, should order be restored in Mexico, it is conceded that its assets would probably be very valuable. A plan of reorganization was in March, 1920, submitted to and approved at a stockholders' meeting. It provided for the organization of a new company, having shares of stock, both common and preferred, with a par value of $10 each; the transfer of all the assets from the old company to the new company; the exchange, share for share, of common stock in the old company for common stock in the new; the exchange, share for share, of the preferred stock upon the payment of $10 (being the par value thereof) for each share of the preferred stock so acquired in the new company, such

exchange to be subject, however, to a condition which is stated in the defendants' brief thus:

"One who held both preferred and common stock could not exchange his common stock in the old company for that of the new, receiving the latter without the payment of any money therefor, unless and until he had surrendered his preferred stock and had paid for the preferred stock in the new company so issued to him."

The authorized number of shares of preferred stock of the new company exceeded the number of outstanding shares of the preferred stock of the old company. The evidence warrants the inference that the shares of preferred stock in the new company would be sold generally to any one at par. The plan also contemplated the issuance of capital stock or certificates of indebtedness of the new company for a large part of the indebtedness of the old company.

The plaintiff and other minority stockholders, including the interveners, opposed the proposed plan when it was presented at the meeting of stockholders, and they have at all times since been consistent in their opposition. The West Coast Timber Company was organized. An instrument of writing purporting to transfer the assets of the Pacific Company to the West Coast Company pursuant to corporate authority was made on or about the 30th day of March of the present year. The bill of complaint was filed on July 7th. The transfer of the assets must, under the circumstances, be considered as a step in the reorganization of the Pacific Company, and not merely as a sale of its assets. Fletcher, Cyc. Corp. § 4866.

[1] An examination of numerous cases bearing upon the question under consideration has led me to the conclusion that where the reorganization of a corporation, effected in part by a sale of its assets to a new corporation, leaves an interest in the stockholders of the old company, or provides for the acquisition by them of an interest in the new company, the right so to participate in such interest must be equally favorable to all stockholders of the same class, and that a denial of such equality of opportunity is a legal fraud upon the stockholders thus discriminated against, entitling them, in the absence of countervailing equities, to a decree setting aside the sale. Jones v. Missouri-Edison Electric Co., 144 Fed. 765, 778, 75 C. C. A. 631; Tanner v. Lindell R. Co., 180 Mo. 25, 79 S. W. 155, 103 Am. St. Rep. 534; Ervin v. Oregon Ry. & Nav. Co. (C. C.) 27 Fed. 625; MacArthur v. Port of Havanna Docks Co. (D. C.) 247 Fed. 984, 988; Cutting v. Railroad Co., 35 Misc. Rep. 616, 72 N. Y. Supp. 27; Sparrow v. Bement & Sons, 142 Mich. 441, 105 N. W. 881, 10 L. R. A. (N. S.) 725; Fletcher, Cyc. Corp. § 4866. Pomeroy's Eq. Juris. (4th Ed.) § 405.

[2] The reorganization plan of the Pacific Company was not equally favorable to all stockholders of the same class. Furthermore, it denied to the holders of the preferred stock, entitled to priority in payment over the common stock upon dissolution or liquidation of the company, rights which it conferred upon the holders of the common stock. In fact, the effect of the reorganization plan was the complete forfeiture

of the preferred stock; for, while it purported to confer rights of participation upon that stock, it in truth denied it all rights, except to buy preferred stock in the new company at par—a privilege (if such it may be called) that was open to the public in general. But, apart from the forfeiture of the preferred stock, the several holders of the common stock were, among themselves, denied equal rights of participation in the new company. The terms upon which they were permitted to participate were dependent upon whether or not the holder of common stock also held preferred stock. As the holders of more than half of the common stock of the Pacific Company had none or practically no preferred stock, while many persons, including the plaintiff and the interveners, held substantially equal amounts of preferred and common stock, it is manifest that the plan of reorganization was for the benefit of the majority, to the detriment of the minority, and consequently unfair and fraudulent.

The sale of the assets must therefore be set aside, unless the defendants' contention that the action of the plaintiff in delaying the institution of this suit until July 7th amounted to laches can be sustained. In my opinion this contention is not well founded.

A decree in accordance with this opinion may be submitted.