JOHN PONDIR, Appellant, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, THE BUFFALO, BRADFORD AND PITTSBURGH RAILROAD COMPANY and HUGH J. JEWETT, as Receiver of THE ERIE RAILWAY COMPANY, Respondents.

*Defect in parties — right of a stockholder to redress a wrong done to his-corporation by another corporation which has obtained control of its board of directors — demand before suit unnecessary.*

When a defect of parties is pleaded, and the plea is sustained by the evidence, the court may refuse to allow the cause to stand over and dismiss the suit ; but when a defect of parties is not pleaded, and the necessity for other parties to the action appears on the trial, the plaintiff not being guilty of *laches*, the suit should not be dismissed, but should be ordered to stand over on proper terms to enable the plaintiff to bring the necessary parties before the court.

The Erie Railroad Company, through the action of the Buffalo,. Bradford and
  Pittsburgh Railroad Company, whose directors were elected and controlled by
  the Erie Company, obtained, without consideration, the property of such latter
  corporation and so arranged its affairs as to render all the shares of its stock
  (other than those held by the Erie Company) valueless.
*Held,* that a stockholder of the Buffalo, Bradford and Pittsburgh Railroad Com-
  pany might maintain an action to redress the wrong done to his company.
*Semble,* that where the delinquent parties are in control of the corporation whose
  stockholders are injured, a demand upon that corporation to bring a suit would
  be futile and is unnecessary.

APPEAL by the plaintiff, John Pondir, from a judgment of the
Supreme Court in favor of the defendants, rendered upon a decision
of the court after a trial at the New York Special Term, and
entered in the office of the clerk of the city and county of New
York on the 15th day of June, 1892, dismissing the plaintiff's com-
plaint on the merits.

This action was brought in January, 1881, by a shareholder in the
Buffalo, Bradford and Pittsburgh Railroad Company to have a lease
executed January 5, 1866, by that corporation to the Erie Railway
Company, and a mortgage executed September 1, 1870, by the latter
corporation on the leasehold interest to the Farmers' Loan and
Trust Company declared null and void, and to compel Hugh J.
Jewett as receiver, and the New York, Lake Erie and Western
Railroad Company to account and pay over to the Buffalo, Brad-
ford and Pittsburgh Railroad Company all receipts, profits and
benefits received by them respectively from the property of the last-
mentioned corporation while in their possession, and also to restrain
the New York, Lake Erie and Western Railroad Company from
voting upon the stock held by it in the Buffalo, Bradford and
Pittsburgh Railroad Company.

The following facts are alleged in the complaint and admitted by
the answers, or are found by the court, and are not challenged by
the appellant's requests or exceptions, or appear on the record and
are uncontradicted :

The Buffalo, Bradford and Pittsburgh Railroad Company was
incorporated in 1857, under the laws of the State of Pennsylvania,
with a capital stock of $950,000, divided into 9,500 shares of the par
value of $100 each, but its capital, under a provision in its charter,

was afterwards, from time to time, increased, so that July 27, 1869, it consisted of 22,864 shares of the par value of $100 each. The 1st day of January, 1865, it mortgaged its property and franchises to Dorman B. Eaton, as trustee, to secure the payment of 2,000 bonds of $1,000 each, aggregating $2,000,000. From 1861 until December 25, 1879, the Erie Railway Company was a corporation incorporated and existing under the laws of New York.

January 5, 1866, the Buffalo, Bradford and Pittsburgh Railroad Company, as party of the first part, and the Erie Railway Company, as party of the second part, entered into a lease by which the former leased to the latter for 499 years from January 1, 1866, its railroad and its lands except the following : " Excepting and reserving, however, unto the party of the first part, and all the oil underlying the demised premises or any part thereof, with the right to them, their successors or assigns, to enter upon said premises or any part thereof, to excavate and bore for the said oil, and to erect all the usual structures for raising, receiving, storing, getting ready for market and taking away and forwarding such oil, and to occupy any part of the demised premises for said purposes, without interfering, however, with the use of the same by the party of the second part as a railroad ; and the party of the second part to transport said oil at usual and reasonable rates."

By this lease the lessee agreed to pay all taxes assessed on the corporation in the States of New York and Pennsylvania, and the interest on the mortgage bonds issued under the mortgage January 1, 1865, and also the principal of the bonds when they should mature. No other rent was agreed to be paid.

The land reserved embraced about 8,000 acres situated in the county of McKean in Pennsylvania. When the lease was executed the Buffalo, Bradford and Pittsburgh Railroad Company had twelve directors, three of whom were directors of the Erie Railway Company, one of them, Robert H. Burdell, being its president, and another, John Arnot, being the vice-president of the Buffalo, Bradford and Pittsburgh Railroad Company, and at this date the Erie Railway Company held 21,875 of the 22,864 shares then outstanding in the Buffalo, Bradford and Pittsburgh Railroad Company, leaving 989 shares owned by others.

September 1, 1870, the Erie Railway Company executed a mort-

gage on the demised property and other property to the Farmers' Loan and Trust Company, to secure the payment of certain bonds, and on the 4th of February, 1874, it executed a second consolidated mortgage on the demised property and other property to said trust company, to secure the payment of $30,000,000 in bonds. In 1875 the trust company brought an action to foreclose the mortgage of February 4, 1874 (to which action the Buffalo, Bradford and Pittsburgh Railroad Company was not a party), in which a judgment of foreclosure and sale was afterwards entered. Hugh J. Jewett was appointed a receiver in this action.

In 1875 the People of the State of New York brought an action to dissolve the Erie Railway Company because of its alleged insolvency, and May 26, 1875, Hugh J. Jewett was appointed a receiver in that action of all the property of the corporation, which action resulted in a judgment entered November 25, 1879, dissolving the corporation, and Jewett was continued as receiver until December 30, 1879, when, having turned over the property to the New York, Lake Erie and Western Railroad Company, he was discharged as receiver.

April 4, 1875, the plaintiff purchased, and has ever since owned, fifty shares of the capital stock of the Buffalo, Bradford and Pittsburgh Railroad Company.

December 30, 1876, the Buffalo, Bradford and Pittsburgh Railroad Company conveyed the lands and interests excepted from the lease to the Northwestern Mining and Exchange Company (a Pennsylvania corporation), for the recited consideration of $40,000, but no consideration for this conveyance has been in fact paid by the grantee to the grantor. At the date of this conveyance six of the thirteen directors of the Buffalo, Bradford and Pittsburgh Railroad Company were directors of the Erie Railway Company, and, since the execution of the lease, the Erie Railway Company and its receiver, and the New York, Lake Erie and Western Railroad Company, by virtue of their ownership of a large majority of the shares of the Buffalo, Bradford and Pittsburgh Railroad Company, have named and elected such directors as these corporations chose for the lessee company.

On the 30th of December, 1876, the Northwestern Mining and Exchange Company, as party of the first part, entered into a con-

tract in the nature of a lease with H. L. Taylor & Co., as party of the second part, by which the lands conveyed, as aforesaid, and other lands, were leased for twenty years to the party of the second part, for the purpose of procuring oil and gas therefrom. The rent or compensation payable was a percentage of the oil and gas that might be produced. Who were the directors of the mining company at the date of the grant does not appear, but the record shows that at the time of the trial of this action, and for several years previous, its board of directors and its executive officers had been filled by the directors and executive officers of the Erie Railway Company and by its successor, the New York, Lake Erie and Western Railroad Company.

April 27, 1878, the New York, Lake Erie and Western Railroad Company was incorporated under the laws of this State, and shortly thereafter it succeeded to all of the property of the Erie Railway Company, including all of its right, title and interest in and to the property leased and conveyed to it by the Buffalo, Bradford and Pittsburgh Railroad Company.

The Northwestern Mining and Exchange Company has a capital of $500,000, all of which is owned by the New York, Lake Erie and Western Railroad Company. On the 13th of May, 1881, the Northwestern Mining and Exchange Company conveyed the 8,000 acres of lands and oil rights to the Wilcox and Howard Improvement Company (a Pennsylvania corporation) for the recited consideration of $100, and for other good considerations. On June 28, 1881, the name of the last-mentioned corporation was changed to the New York, Lake Erie and Western Coal and Railroad Company. When the last-mentioned conveyance was made the trustees of the grantee were not connected with the New York, Lake Erie and Western Railroad Company, but at the date of the trial of this action its trustees were connected with the last-named corporation. The New York, Lake Erie and Western Railroad Company owns all of the stock of the Northwestern Mining and Exchange Company, which corporation owns all of the stock of the New York, Lake Erie and Western Coal and Railroad Company. Since the conveyance of the 8,000 acres of land to the Northwestern Mining and Exchange Company, Hugh J. Jewett, as receiver of the Erie Railway Company, and the New York, Lake Erie and Western Railroad Company,

have derived a considerable income from the property. But two dividends have been paid upon the shares of the Buffalo, Bradford and Pittsburgh Railroad Company since that date, one of one dollar per share, paid March twenty-eighth, and another of sixty-two cents per share, paid October 9, 1885.

*Simon Sterne,* for the appellant.

*W. W. MacFarland,* for the respondents.

FOLLETT, J.:

There is no conflict in the evidence in this case. All of the material facts were testified to by the officers and employees of the defendants, who offered no evidence except the order of December 30, 1879, discharging Hugh J. Jewett as receiver of the Erie Railway Company. By the transactions set forth in the statement of facts the Erie Railway Company and its successor, the New York, Lake Erie and Western Railroad Company, have acquired the property reserved in the lease without any consideration being paid therefor. This was effected through the compliant board of directors of the Buffalo, Bradford and Pittsburgh Railroad Company, elected and controlled by the Erie Railway Company, which held a majority of the stock of the Buffalo, Bradford and Pittsburgh Railroad Company. By this means the last-mentioned corporation was stripped of all of its property except that used for railroad purposes, and for the use of which nothing will be paid for 499 years, except taxes assessed on its property and the interest on its debt. This renders all of the shares not held by the Erie Railway Company practically valueless, and that such was the intended effect is apparent from the transactions. This was a fraud on the Buffalo, Bradford and Pittsburgh Railroad Company and its shareholders. Such frauds are not uncommon in the management of corporations, and when they are exposed should be condemned by the courts and a heavy hand laid upon all who participate in them.

On the 16th of March, 1880, the plaintiff requested the Buffalo, Bradford and Pittsburgh Railroad Company to bring an action against the Erie Railway Company to redress the wrongs herein complained of, which request was not complied with, and it is apparent that further application would have been unavailing, for the

three defendants appeared in this action by the same attorneys and served answers in all respects alike, except it is alleged in the answer of Hugh J. Jewett that his accounts as receiver have been approved by the court, and that he has surrendered all of the property that came into his hands, and was discharged from his receivership on the 30th day of December, 1879. Under such circumstances an action may be maintained by a shareholder to redress the wrong done to the corporation of which he is a member. (*Brinckerhoff* v. *Bostwick*, 88 N. Y. 52; *Barr* v. *N. Y.*, *Lake Erie & Western R. R. Co.*, 125 id. 263.) In the case first cited it was said : " The action to recover such losses, as before observed, should, in general, be brought in the name of the corporation, but if it refuses to prosecute, the stockholders, who are the real parties in interest, will be permitted to sue in their own names, making the corporation a defendant. (69 N. Y. 154.) And that course of proceeding is also allowed if it appears that the corporation is still under the control of those who must be made the defendants in the suit. (See *Butts* v. *Wood*, 37 N. Y. 317; *Robinson* v. *Smith*, 3 Paige, 222.) In such cases a demand upon the corporation to bring the suit would be manifestly futile and unnecessary. A suit prosecuted under the direction and control of the very parties against whom the misconduct is alleged, and a recovery is sought, would scarcely afford to the shareholders the remedy to which they are entitled, and the fact that the delinquent parties are still in control of the corporation is of itself sufficient to entitle the shareholders to sue in their own names. (*Hodges* v. *New England Screw Co.*, 1 R. I. 312; *Heath* v. *Erie Railway Co.*, 8 Blatchf. 347.) If they could not be permitted in such cases to assert their own rights in a court of equity, the directors, so long as they remained in office, could set them at defiance."

The Buffalo, Bradford and Pittsburgh Railroad Company was not a party to the action for the foreclosure of the mortgage under the judgment in which the property of the Erie Railway Company was sold and acquired by the New York, Lake Erie and Western Railroad Company, and the rights of the Buffalo, Bradford and Pittsburgh Railroad Company are not cut off by the judgment and sale, and, besides, the mortgage was not a lien on the property and rights reserved to the lessor in the lease.

Upon the discovery of the fraud an action could be maintained by a shareholder (the corporation refusing to sue) to set aside the deed of December 30, 1876, and the subsequent conveyances and liens, but to such an action the subsequent grantees and holders of liens are necessary parties; or an action could be maintained against the parties to the fraud and those who subsequently aided in its' consummation to compel them to account as trustees *ex maleficio* for whatever they have received through the wrongs which they committed. To such an action the subsequent grantees and lienors are not necessary parties, for no relief could be granted against them, and in this case, for a stronger reason, the Northwestern Mining and Exchange Company and the New York, Lake Erie and Western Coal and Railroad Company are not necessary parties to such an action, for the stock of both corporations is entirely owned by the New York, Lake Erie and Western Railroad Company.

It is asserted that in no event can Jewett, as receiver, be compelled to account. This may or may not be so. The conveyance of December 30, 1876, by which the Buffalo, Bradford and Pittsburgh Railroad Company was deprived of its property was executed when Jewett was acting as the receiver of the Erie Railway Company, and for several years he, as receiver, received a portion of the rents and profits of the lands conveyed. We think he should be required to account and to show how these receipts were disposed of. It may be that it will appear that his accounts rendered to the court were so stated that its order approving of his transactions and discharging him will be a defense, but this cannot be determined in advance of the accounting.

Under the evidence contained in this record we can see no answer to the plaintiff's claim that the New York, Lake Erie and Western Railroad Company should be required to account and pay over to the plaintiff the rents and profits acquired by it through these fraudulent dispositions of the property of the corporation in which the plaintiff is a shareholder.

The defendants not having pleaded that the subsequent grantees of the Buffalo, Bradford and Pittsburgh Railroad Company and the persons and corporations who have acquired liens upon the property were necessary parties, they were not in a situation to ask to have the action dismissed on the ground that those corporations and per-

sons should have been brought into the action. (Code Civ. Proc. § 499.) When a defect of parties is pleaded and the plea is sustained by the evidence, the court may refuse to allow the cause to stand over and dismiss the suit, but when a defect of parties is not pleaded and the necessity for other parties to the action appears on the trial, the plaintiff not being guilty of *laches*, the suit should not be dismissed, but ordered to stand over on proper terms to enable the plaintiff to bring the necessary parties before the court. (*Colt* v. *Lasnier*, 9 Cow. 320; *Van Epps* v. *Van Deusen*, 4 Paige, 64; 1 Barb. Ch. Pr. 321; 1 Dan. Ch. Pr. [3d Am. 'ed.] 291 *et seq.*)

The judgment should be reversed and a new trial granted, with leave to the plaintiff to apply to bring in any such additional parties as he may be advised, with costs to the appellant to abide the event.

Van Brunt, P. J., concurred.

Judgment reversed and new trial granted, with leave to the plaintiff to apply to bring in any such additional parties as he may be advised, with costs to the appellant to abide the event.