JONES v. MISSOURI-EDISON ELECTRIC CO. et al.

No. 2,302.

(Circuit Court of Appeals, Eighth Circuit. April 17, 1906.)

1. CORPORATIONS—CONSOLIDATION—VALID WHEN AUTHORIZED AND FAITHFULLY EXECUTED—RELATION OF STOCKHOLDER CONTRACTUAL.

The relation of a stockholder to his corporation, its officers and his co-stockholders is one of contract in which the pertinent statutes and the settled law are embodied. Where the law or the applicable statutes empower directors and the holders of three-fifths of the stock of a corpora-

tion to consolidate with another corporation, a consolidation wrought by the faithful exercise of this power is neither void nor voidable at the option of the holder of the minority of the stock.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, §§ 649, 650, 2343.]

2. SAME—RELATION OF DIRECTORS AND MAJORITY STOCKHOLDERS TO MINORITY STOCKHOLDERS FIDUCIARY.

The relation of the holders of the majority of the stock of a corporation and that of its directors to the holders of the minority of the stock is fiduciary. A corporation is a trustee for its stockholders. Where the holders of the majority of the stock of a corporation combine, elect and control its directors, to execute a preconceived scheme and use the powers of the corporation to carry it out, they put themselves in the place of the corporation and become trustees for the holders of the minority of the stock.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, §§ 649, 650.]

3. SAME—DISPOSITION OF CORPORATE PROPERTY BY MAJORITY STOCKHOLDERS FOR THEIR GAIN AT EXPENSE OF MINORITY STOCKHOLDERS—BREACH OF TRUST.

Any sale of the corporate property by the majority stockholders to themselves, and any disposition by them of the corporation or of its property to deprive the minority stockholders of their just share of the latter, or to get gain for the majority at the expense of the minority, is a breach of trust which renders the sale or disposition voidable and the property recoverable at the suit of the corporation or of a minority stockholder on his own and its behalf.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, §§ 665–668.]

4. SAME—RIGHT OF ACTION AT LAW FOR DAMAGES NO BAR TO SUIT IN EQUITY TO AVOID SUCH TRANSACTION.

The fact that the minority stockholders may maintain an action at law for the value of their stock is no bar to their suit in equity to avoid the contract and transaction. They have the option to avoid the transaction and follow the trust property in equity or to affirm it and to recover as damages at law the value of their stock.

5. SAME—CONSOLIDATION OF CORPORATIONS—MINORITY STOCKHOLDER'S RIGHT TO AVOID—FACTS—DECISION.

The complainant avers in his bill that pursuant to a preconceived scheme the holders of three-fifths of the stock of the Edison Company elected biddable directors and consolidated the corporation with the Union company whose stock was owned by the majority, against the protest of the holder of a minority of the preferred stock of the Edison company, upon such terms that while before the consolidation the preferred stock of the Edison Company represented one-half of the combined net assets of the two corporations, it represented less than 5/32 thereof after the consolidation, and while the stock of the Union company represented only 6/32 of the net combined assets before the consolidation, it represented four-fifths thereof after the consolidation. Held (1) the contract and act of consolidation constituted a fraud in law upon the holders of the minority of the preferred stock and an abuse of the fiduciary relation which the holders of the majority and the directors bore to the holders of the minority of the stock; (2) the contract and act of consolidation were voidable in equity at the suit of the Edison Company or at the suit of one of its minority stockholders on his own and its behalf; (3) the consolidated corporation holds the property of the Edison Company charged with the same trust imposed upon it in the hands of the majority stockholders thereof who represented the consolidated corporation also in the consolidation; (4) a court of equity has plenary power to rehabilitate the Edison Company if that action be necessary to secure to the minority stockholders complete relief. But it may consider at the final hearing the substantial rights of all the parties and the controlling

equities and mold its decree to do complete equity to the minority stockholders and to avoid inequity to the other parties to the suit; (5) the directors of the Edison company who signed the agreement of consolidation were proper parties to the bill, which contained a prayer for the rehabilitation of the Edison Company and for the transfer to the complainant upon its books of certain shares of the corporation of which he was the equitable owner; (6) the bill states a good cause of action in equity.

6. SAME—CONSOLIDATION OF CORPORATIONS—SUIT TO AVOID FOR BREACH OF TRUST NOT BARRED BY RULE THAT STATE ALONE MAY QUESTION CORPORATE EXISTENCE.

The rule that the existence of a corporation may be questioned only by the state is no bar and has no application to a suit by a minority stockholder to avoid for fraud or breach of trust a contract and act of consolidation and to restore to the corporation injured, or to its stockholders, the powers, franchises, and property transferred by these means to the consolidated company.

7. EQUITY—PRACTICE—PRAYER IN ALTERNATIVE FOR RESTORATION OF PROPERTY FOR FRAUD OR FOR LIEN FOR VALUE COMPETENT.

Where a complainant is uncertain whether upon a certain state of facts he is entitled to avoid a contract or transfer for fraud or breach of trust and to recover back his property, or to enforce a lien upon it for its value, he may pray for each in the alternative, and a court of equity will grant him the relief to which it deems him entitled.

[Ed. Note.—For cases in point, see vol. 19, Cent. Dig. Equity, § 321.]

8. CORPORATIONS—CONSOLIDATION DOES NOT EXTINGUISH STOCKHOLDERS' RIGHT TO AVOID.

A consolidation of corporations wrought by fraud or breach of trust does not so extinguish the old corporations that they and their minority stockholders are deprived of their rights to maintain suits in equity to avoid it.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, § 2353.]

9. SAME—STOCKHOLDER MAY JOIN CLAIM ON BEHALF OF CORPORATION AND CLAIM ON HIS OWN BEHALF FOR SAME RELIEF.

A claim of a minority stockholder on behalf of his corporation and his claim on his own behalf, founded on the same facts, which warrant the same or similar relief, may be joined in the same bill.

10. EQUITY—MULTIFARIOUSNESS—JOINDER OF MAJORITY STOCKHOLDERS AND DIRECTORS DOES NOT CREATE—JOINDER OF CAUSES FOR SAME RELIEF DOES NOT CREATE.

The joinder in a suit by a minority stockholder to avoid a consolidation, of the majority stockholders and the directors who took an active part in creating the consolidation, does not render a bill multifarious. A bill is not multifarious which presents a common point of litigation, the decision of which will affect the whole subject-matter and settle the rights of all the parties to the suit. The union of several causes of action for the same demand or relief does not create multifariousness.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, § 819; vol. 19, Cent. Dig. Equity, §§ 347, 357.]

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

For opinion below, see 135 Fed. 153.

The statutes of the state of Missouri empower any two corporations of that state organized or created solely for manufacturing purposes whose objects and business are of the same nature, to consolidate into one corporation upon the consent of the owners of three-fifths of the capital stock of each. Rev. St. Mo. 1899, §§ 1334, 1335, 1336. The appellant, who was the complainant below, had the legal title to 10, and the equitable title to

992, shares of the preferred stock of the Missouri-Edison Electric Company, a corporation of the state of Missouri, which was consolidated on September 9, 1903, with the Union Electric Light & Power Company, hereafter called the "Union Company," a corporation of the same state, into the Union Electric Light & Power Company, which will henceforth be styled the "Consolidated Company." He exhibited his bill on his own behalf, and on the behalf of all others similarly situated, and also for the use of the Edison Company against the three corporations and the directors of the Edison Company, to avoid this consolidation, or to have the value of his stock ascertained and the amount thereof adjudged to be a lien upon the property of the Edison Company and the Consolidated Company, and to secure a decree that the latter company should pay this amount. The directors demurred to the bill upon the grounds that it did not state facts sufficient to constitute a cause of action against them and that it was multifarious. The consolidated company interposed a separate demurrer upon the same grounds. The demurrers were sustained, and the bill was dismissed, upon the ground that it stated no cause of action against any of the defendants, and from the decree of dismissal, the complainant appealed.

The alleged facts set forth in the bill which are deemed material to the decision of the questions presented by the appeal are these: The North American Company, a corporation of the state of New Jersey, which is engaged in the acquisition of electric light and power plants, conceived in 1901, and commenced to execute the scheme of consolidating all the electric light and power plants in the city of St. Louis, and of thereby dispensing with competition and securing a monopoly of the business of furnishing electric light and power in that city. There were four corporations empowered to conduct this business. The North American Company acquired substantially all the capital stock of two of them, the Citizens' Electric Light & Power Company, which had a capital stock of $2,000,000 and property of no greater value than $600,000, and the Imperial Electric Light, Heat & Power Company, which had a capital stock of $1,500,000 and property which was worth not more than $1,500,000 and was mortgaged for that amount, and consolidated them on May 16, 1902, into the Union Company, which had a capital stock of $10,000,000, $2,000,000 of which was preferred, and net assets not exceeding $600,000, or 6 per cent. of the stock which represented them. The North American Company associated and allied with itself in the execution of its scheme a trust company and certain citizens of the city of St. Louis and these schemers purchased, about May 15, 1903, of the directors of the Edison Company, substantially all their stock, 1,725 shares of the preferred stock of that company which was in its treasury and other shares of its stock sufficient to make the aggregate of their holdings more than the three-fifths requisite under the statutes to authorize a consolidation with another corporation. These schemers had previously conceived the plan of depriving the stockholders, and especially those preferred stockholders of the Edison Company, who did not sell their shares to them, of the larger part of the value of their stock by selling the property of their corporation to themselves by means of the legal device of a consolidation of the Edison Company with a corporation which they owned. It was for the purpose of carrying out this plan that they had created the Union Company and had issued, for the purpose of representing net assets of only $600,000, the capital stock of that corporation for $10,000,000, in order to furnish an apparent consideration for the purchase they intended to effect, and it was to this end that they purchased three-fifths of the stock of the Edison Company. The net assets of that company were worth $2,600,000, which was represented by $2,000,000 preferred stock and $2,000,000 common stock. The company owed its preferred stockholders about $600,000 cumulative dividends, which had been earned but had not been paid, so that the preferred stock represented at least $1,600,000 of the $2,600,000 net assets of that company. In acquiring the three-fifths of the stock of the Edison Company the schemers bought more of the common than of the preferred stock and contrived to depreciate the market value of the latter to about 50 per cent. of its par value, while they practiced to increase the market value of the common stock. After they had become the owners of $10,000,000 of the stock of the Union Company

and of three-fifths of the stock of the Edison Company they caused the individual defendants to be elected nominal directors of the latter company to execute their plan. But these defendants never exercised any judgment or discretion in the discharge of their assumed duties, but were the mere puppets of the schemers and did their bidding without question in all things. The schemers had chosen a board of directors of the Union Company which they controlled in the same manner. Thereupon, they prepared an agreement of consolidation of the two companies into the Consolidated Union Company, and caused it to be executed by the boards of directors, and to be ratified by three-fifths of the stockholders of each of the constituent companies. By this agreement the capital stock of the Consolidated Company was made $10,000,000, $2.500,000 of which was placed in a trust company subject to the order of its board of directors, and $7,500,000 of it and $75,000 in cash were assigned for the stock of the constituent companies in this way. $1,000,-000 stock of the Consolidated Company and $50,000 for the $2,000,000 preferred stock of the Edison Company; $500,000 stock of the Consolidated Company and $25,000 for the $2,000,000 common stock of the Edison Company; $6.000.000 stock of the Consolidated Company for the $10,000,000 stock of the Union Company. The complainant objected to and voted against this consolidation, but the schemers held about 85 per cent. of the stock of his corporation and they ratified the agreement. Their board of directors and officers turned the property of the Edison Company over to the Consolidated Company and failed, upon the request of the complainant, to bring suit to set aside the consolidation.

The pleaded facts which have now been stated when analyzed and compared disclose these results: The net assets represented by the stock of the constituent companies at the time of this consolidation was $3,200,000, of which the $10.000.000 stock of the Union Company represented $600,000 and the $4,000,000 stock of the Edison Company represented $2.600,000. After the consolidation the stock of the Union Company represented $2,560,000 and that of the Edison Company $640,000 of the joint assets plus $75,000 in cash. The proportionate ownership of the combined net assets before the consolidation was the stock of the Union Company 6/32 and the stock of the Edison Company 26/32. After the consolidation it was. the stock of the Union Company four-fifths and the stock of the Edison Company one-fifth plus $75,000. The preferred stock of the Edison Company held a lien in equity for $600,000 on its net assets, $2,600,000, and represented at least one-half of the remaining $2,000,000, or at least $1,600,000 of the $3.200,000, which constituted the aggregate of the combined net assets of the constituent companies. In other words at the time of the consolidation the preferred stock of the Edison Company represented and was entitled to one-half of the combined assets of the constituent companies. After the consolidation it represented $426.666 of these assets plus $50,000 in cash, in all $476,666, or not more than 5/32 of them, while the holdings of the stock of the Union Company had been increased thereby from 6/32 to four-fifths of the combined assets.

The complainant alleged that this consolidation was unauthorized by the statutes of Missouri, that it was a fraudulent sale of the property of the Edison Company, and of the complainant's property by the schemers to themselves at an unconscionably low price, that it was a breach of trust by the majority of the stockholders of the Edison Company, by that corporation and by its directors, and that the Consolidated Company holds the property of the Edison Company and the complainant's property with notice of all these facts and should restore it to the Edison Company. He averred that the schemers had secured a controlling interest in the Laclede Gas Light Company, the principal remaining rival corporation engaged in the business of lighting and heating in the city of St. Louis, and had thereby completed the monopoly they had sought to secure. He alleged that the individual defendants had failed to pay over to the preferred stockholders of the Edison Company the dividends which that corporation had earned and to which they were entitled, had sold 1,725 shares of preferred stock which was in the treasury of the corporation to the schemers without notice to the stockholders who had a preferential right to buy it, had transferred the property of the Edison Company to the Consolidated Company, and had in other respects

144 F.—49

violated their duties as directors. He averred that he had purchased the 992 shares of preferred stock from their former owners; that these shares had been duly assigned to him; that he held the certificates which repre-sented them properly indorsed; that after the 9th day of September, 1903, he had presented to the officers of the Edison Company, had offered to surrender these certificates, and had requested the officers to transfer these shares to him upon the books of the company and to issue to him new certificates therefor; but that, by order of the individual defendants, they had refused to do so.

The prayer of his bill was that the consolidation be avoided, that the property of the Edison Company and its income since September 9, 1903, be restored to that corporation and that certificates for his 992 shares of its stock be issued to him, or that the value of his stock be ascertained by the court, that he be declared to have a lien for the amount of this value upon the property of the Edison Company and upon the property of the Consolidated Union Company and that the latter corporation be adjudged to pay to him the amount of this lien.

Eleneious Smith and Ford W. Thompson (D. T. Bomar, J. E. Bomai, and W. B. Thompson, on the brief), for appellant.

H. S. Priest, for appellees.

Before SANBORN and HOOK, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The complainant seeks a restoration from the Consolidated Company of the property of the Edison Company on the grounds (1) that the consolidation was unauthorized by the statutes of Missouri and violative of the anti-trust laws of that state; and (2), that it was accomplished by a fraudulent abuse of the fiduciary relation which the holders of the majority of the stock of the Edison Company and the directors of that corporation bore to the holders of the minority of its stock. If the bill states sufficient facts to invoke relief in equity upon either of these grounds, it must be sustained. Westinghouse Air Brake Co. v. Kansas City Southern Railway Co. (C. C. A.) 137 Fed. 26, 32.

The relation of a stockholder to his corporation, to its officers and to his co-stockholders, is one of contract and of confidence. By the acceptance of his shares of stock he agrees to assume the liabilities and to discharge the duties imposed upon a stockholder by the law. The statutes, the charter and the by-laws of the corporation, as well as the settled law of the land at the time he takes his stock, are read into, and become a part of his agreement. The provision of the statutes of Missouri that a manufacturing corporation might be consolidated with another corporation whose objects and business were of the same nature, upon the consent of three-fifths of the owners of its stock, was a part of the agreement of the complainant and a consolidation made by the officers and the owners of the requisite amount of the stock of his corporation by the faithful exercise of the powers thus granted was neither void in itself nor voidable at his option, because it was but the performance of the agreement which he made with them. Erwin v. Oregon Ry. & Nav. Co. (C. C.) 20 Fed. 577, 580; Durfee v. Old Colony, etc., R. Co., 5 Allen (Mass.) 234, 242; Bill v. Western Union Tel. Co. (C. C.) 16 Fed. 14, 19. Conceding, but not deciding that the consolidation here in question was authorized by, and was not obnoxious to the laws of Missouri, let us consider the second ground upon which the complainant founds his prayer for relief.

The fraud or breach of trust of one who occupies a fiduciary relation while in the exercise of a lawful power is as fatal in equity to the resultant act or contract as the absence of the power. The relation of a stockholder to his corporation, to its officers and to his co-stockholders is a relation of trust and confidence. The corporation holds its property in trust for its stockholders who have a joint interest in it. The officers of the corporation, if not technical trustees for the stockholders, are such in so real a sense that any use by them of the property of the corporation for their own profit to the detriment of any of the stockholders is a breach of their trust and their duty, which is actionable in equity. The stockholders of a corporation are jointly interested in the same property and in the same title. Community of interest in a common property or title imposes a community of duty and mutual obligation to do nothing to impair the property or the title. It creates such a fiduciary relation as makes it inequitable for any of those who thus share in the common property to do anything to or with it for their own profit at the expense of others who have the same rights. Jackson v. Ludeling, 21 Wall. 616, 622, 22 L. Ed. 492; Booker v. Crocker, 132 Fed. 7, 8, 65 C. C. A. 627, 628.

A combination of the holders of a majority or of three-fifths of the stock of a corporation to elect directors, to dictate their acts and the acts of the corporation for the purpose of carrying out a predetermined plan places the holders of such stock in the shoes of the corporation and constitutes them actual, if not technical trustees for the holders of the minority of the stock. The devolution of power imposes correlative duty. The members of such a combination become in practical effect the corporation itself because they draw to themselves and use the powers of the corporation. In a sale of its property, in a consolidation of the corporation with another, in every act and contract of the corporation which they cause they make themselves the trustees and agents of the holders of the minority of the stock because it is only through them that the latter may act or contract regarding the corporate property or preserve or protect their interests in it. Such a majority of the holders of stock owe to the minority the duty to exercise good faith, care, and diligence to make the property of the corporation in their charge produce the largest possible amount, to protect the interests of the holders of the minority of the stock and to secure and deliver to them their just proportion of the income and of the proceeds of the property. Any sale of the corporate property to themselves, any disposition by them of the corporation or of its property to deprive the minority holders of their just share of it or to get gain for themselves at the expense of the holders of the minority of the stock, becomes a breach of duty and of trust which invokes plenary relief from a court of chancery. Jackson v. Ludeling, 21 Wall. 616, 622, 22 L. Ed. 492; Menier v. Hooper's Telegraph Works, 9 Ch. App. Cas. 350, 352, 353; Goodin v. Cincinnati & Whitewater Canal Co., 18 Ohio St. 169, 182, 183, 98 Am. Dec. 95; Ervin v. Oregon Ry. & Nav. Co. (C. C.) 20 Fed. 577, 580, 27 Fed. 625, 632; 2 Story's Eq. Jur. §§ 1261, 1262; Sage v. Culver, 147 N. Y. 241, 247, 41 N. E. 513; Gamble v. Q. C. W. Co., 123 N. Y. 91, 99, 25 N. E. 201, 9 L. R. A. 527; Farmers' Loan & Trust Co. v. N. Y., etc., R. R. Co., 150 N. Y. 410, 425, 430,

44 N. E. 1043, 34 L. R. A. 76, 55 Am. St. Rep. 689; Hinds v. Fishkill, etc., Gas Co. (Sup.) 88 N. Y. Supp. 954, 957; Meeker v. Winthrop Iron Co. (C. C.) 17 Fed. 48; Sidell v. Missouri Pac. R. Co., 24 C. C. A. 216, 219, 78 Fed. 724, 727; Barr v. N. Y., L. E. & W. R. R. Co., 96 N. Y. 444, 449, 451, 456; Wright v. Oroville M. Co., 40 Cal. 20, 27; Pondir v. N. Y., L. E. & W. R. R. Co., 72 Hun, 384, 390, 25 N. Y. Supp. 560; Gregory v. Patchett, 33 Beavan, 595, 607; Meyer v. Staten Island Ry. Co., 7 N. Y. St. Rep. 245, 248.

In Jackson v. Ludeling, 21 Wall. 616, 622, 625, 633, 634, 22 L. Ed. 492, a mortgage bondholder and the directors of the mortgagor corporation combined together and caused a foreclosure sale of the mortgaged property to themselves at an unconscionably low price, and the Supreme Court avoided the sale at the suit of the other bondholders, restored the property to the mortgagor and re-established the lien of the mortgage. The forms of law in the foreclosure and sale had been scrupulously observed. There was no lack of power in the complainants or in the court to foreclose the mortgage and no irregularity of the proceeding. But the court held that the bondholder and the directors were in a very legitimate sense trustees for the other bondholders, that they had no right to seek their own profit at the expense of the mortgagor, its stockholders or bondholders, and that their acts and transactions were voidable at the suit of the latter.

In Menier v. Hooper's Telegraph Works, 9 Ch. App. Cas. 350, 353, 354, the officers of Hooper's Company held a majority of the stock and nominated a majority of the board of directors of the European Company. They caused the directors of the latter corporation to abandon a well-founded suit in its behalf and put it into liquidation to the advantage of Hooper's Company and the loss of the holders of the minority of the stock of the European Company. One of the latter exhibited his bill and prayed that Hooper's Company might be adjudged to be a trustee of the profits it had secured for the benefit of the shareholders of the European Company. Lord Justice James said:

"The minority of the stockholders say in effect that the majority has divided the assets of the company, more or less, between themselves, to the exclusion of the minority. * * * Assuming the case to be as alleged by the bill, then the majority have put something into their pockets at the expense of the minority. If so, it appears to me that the minority have a right to have their share of the benefits ascertained for them in the best way in which the court can do it, and given to them."

Lord Justice Mellish said:

"I am of opinion that although it may be quite true that the shareholders of a company may vote as they please, and for the purpose of their own interests, yet that the majority of shareholders cannot sell the assets of the company and keep the consideration, but must allow the minority to have their share of any consideration which may come to them."

And the bill was sustained.

In Goodin v. Cincinnati & Whitewater Canal Co., 18 Ohio St. 169, 183, 98 Am. Dec. 95, the stockholders of railroad companies purchased a majority of the stock, and selected a board of directors of a canal company and then caused the boards of directors of the three corporations, which they controlled, to agree upon a low appraisal for which all the property of the canal company should be condemned for the benefit

of the railroad companies. Two of the holders of a minority of the stock of the canal company brought a suit to avoid the condemnation and this agreement and the court said:

"The vendor and purchaser were in the same interest. As directors of the canal company, it was the duty of Mr. Lord and his associates to obtain the highest price for the property; while as stockholders of the railroad company, it was their interest to get it as low as possible. It was, in effect, a sale by the railroad company to itself. There was no adverse interest or adversary parties, and the sale was a mere form. Nothing is better settled in equity than that such a transaction, on the part of a trustee, does not bind the cestui que trust. It is equally well settled that the property of a corporation is a trust fund in the hands of its directors, for the benefit of its creditors and stockholders. * * * Any act of the directory by which they intentionally diminish the value of the stock or property of the company is a breach of trust, for which any of the stockholders or creditors may justly complain, although all the other stockholders and creditors are benefited in some other way, more than they are injured as such."

In Meeker v. Winthrop Iron Co. (C. C.) 17 Fed. 48, 50, 52, the Winthrop Iron Company owned a mine worth $500,000. The Winthrop Hematite Company desired to obtain a lease of it. The owners of the stock of the latter corporation purchased a majority of the stock of the former, elected a majority of its board of directors and then caused the boards of the two companies to make a lease of the mine to the Hematite Company for 18 years on such terms as would during that time give all the profits of the mine to the Hematite Company, Minority stockholders brought suit on behalf of themselves and other stockholders to rescind the lease and to obtain an account of the rents and profits under it and the court granted their prayer. It said:

"The ownership of a majority of the capital stock of a corporation invests the holders thereof with many and valuable incidental rights. They may legally control the company's business, prescribe its general policy, make themselves its agents, and take reasonable compensation for their services. But, in thus assuming the control, they also take upon themselves the correlative duty of diligence and good faith. They cannot lawfully manipulate the company's business in their own interests to the injury of other corporators. Any contract made by them in behalf of their principal with themselves or with another for their personal gain would be voidable at the option of the company."

In Pondir v. N. Y., L. E. & W. R. R. Co., 72 Hun, 384, 389, 391, 25 N. Y. Supp. 560, the Erie Railway Company held a majority of the stock of the Buffalo, Bradford & Pittsburg Railroad Company, elected its board of directors and caused them to strip the Pittsburg company of all its property except its railroad and appurtenances and to lease those to the Erie company for 499 years for taxes and interest. The court sustained a bill for equitable relief exhibited by the minority stockholders.

In Hinds v. Fishkill, etc., Gas Co. (Sup.) 88 N. Y. Supp. 954, the holders of the majority of the stock of one corporation organized a new corporation in which they also secured a majority of the stock and then sold the property of the old corporation which was worth $250,000 to the new corporation for $66,000. The bill of a holder of a minority of the stock who brought suit in behalf of his corporation to rescind the sale was sustained.

In Ervin v. Oregon Ry. & Nav. Co., 20 Fed. 577, 27 Fed. 625, 631, 635, Villard organized a new corporation, purchased and caused to be transferred to it a majority of the stock of the Oregon Steam Navigation Company. Thereupon, he and the new corporation elected the directors of that company, the directors of the steam navigation company and caused the two boards of directors to make a sale of the property of the old company to the new corporation at an inadequate price and to dissolve the old corporation. The holder of a minority of the stock of the latter brought a suit in equity on his own behalf and on behalf of other stockholders who should join him against Villard and the new corporation and prayed that their acts should be decreed to be fraudulent and void, that they should be adjudged to pay to him his share of the property of the old company, that the new company should be decreed to hold the property it had acquired from the old corporation as a trustee for the complainant in proportion to his interest therein and that he should have a lien thereon. The court held that the defendants had a right under the statute to dissolve the old corporation, to sell its property, and to distribute its proceeds among its creditors and stockholders and that their proceedings were carefully conducted according to the provisions of the law. But it also held that by their ownership of a majority of the stock of the old corporation and their exercise of its powers they constituted themselves trustees for the holders of the minority of its stock, that their sale of the property of that corporation to the new company for an insufficient price was a breach of their trust and of their duty as fiduciaries and that it charged the property of the steam navigation company in the possession of the new corporation with a trust in favor of the complainant. The decree was that he had an equitable lien upon the property of the steam company which had passed into the possession of the new corporation prior to the lien of the latter's stockholders for the value of his share of the property of the old corporation at the time of its dissolution.

Perhaps the opinions to which reference has now been made sufficiently illustrate the principles of equity determinative of the case in hand. If the averments of the bill are true, the holders of the majority of the stock of the Edison Company were the owners of the stock of the Union Company at the time of the consolidation. They had issued a capital stock of $10,000,000 for that company to represent net assets of only $600,000 and had purchased the majority of the stock of the Edison Company with the preconceived intent to deprive the holders of its preferred stock of a large share of its value for their own profit. For this purpose they had elected directors of the Edison Company whose acts they dictated. The complainant was a preferred stockholder of the Edison Company. The preferred stock of that corporation represented, and was entitled to continue to represent, one-half of the combined net assets of the two constituent corporations, while the stock of the Union Company which the majority stockholders owned represented only 6/32 thereof. The holders of the majority of the stock of the Edison Company and their directors drew unto themselves and exercised its corporate powers. They thereby constituted themselves trustees of the property of the Edison Company for the minority stockholders and stood in the shoes of that corporation. It was their

duty to so exercise their power of consolidation that the holders of the preferred stock of the Edison Company should receive one-half of the stock of the Consolidated Company which they assigned to represent these combined assets, and that they, as holders of the stock of the Union Company, should receive 6/32 thereof. They had the power to discharge this duty, for they controlled the boards of directors of both the constituent companies. Their interest was to distribute a smaller proportion of the stock of the Consolidated Company to the holders of the preferred stock of the Edison Company and a larger proportion to themselves, the holders of the stock of the Union Company. Interest triumphed over duty. They caused their directors to make, and they ratified a consolidation whereby the holders of the preferred stock of the Edison Company received stock which represented only 5/32, instead of one-half, while they as owners of the stock of the Union Company received four-fifths, instead of 6/32 of the stock of the Consolidated Company, which was assigned to represent the net assets of the constituent companies. In effect they sold and transferred to themselves as owners of the stock of the Union Company, by means of this consolidation, property of their cestuis que trust, the preferred stockholders of the Edison Company, worth $1,600,000, for property worth less than $500,000. The conclusion that these facts present no ground for relief by a court of chancery is not deducible from the rules and principles of equity jurisprudence. Assuming, as we must, that the bill truthfully portrays the transaction, it was a legal fraud upon the holders of the minority of the preferred stock. The use by the holders of the majority of the stock of their fiduciary relation to the holders of the minority to get profit for themselves and to impose loss upon their cestuis que trust rendered this contract and consolidation voidable at the option of the latter. It charged the property of the Edison Company, its proceeds, substitutes and income in the possession of the consolidated corporation, whom also the majority represented, with the same trust to which it was subject in their hands. It is the peculiar province of courts of equity to enforce trusts and to avoid unconscionable acts and contracts, and the facts charged in this bill appeal with compelling force to the conscience of a chancellor for adequate relief.

Counsel for the defendants argues with an ingenuity and persuasive force that command admiration that, conceding the wrong, there are many reasons why a court of equity can apply no remedy under this bill. He says that the existence of the consolidated corporation may not be collaterally assailed and annulled by a private party and that it may be successfully questioned by the state only, and he cites in support of this contention, Town of East Lincoln v. Davenport, 94 U. S. 801, 24 L. Ed. 322; Nugent v. Supervisors, 19 Wall. 249, 22 L. Ed. 83; County of Scotland v. Thomas, 94 U. S. 682, 24 L. Ed. 219; Wilson v. Salamanca, 99 U. S. 499, 25 L. Ed. 330; Empire v. Darlington, 101 U. S. 87, 25 L. Ed. 878; Menasha v. Hazard, 102 U. S. 81, 26 L. Ed. 83; Harter v. Kernochan, 103 U. S. 562, 26 L. Ed. 411; County of Tipton v. Locomotive Works, 103 U. S. 523, 26 L. Ed. 340; New Buffalo v. Iron Co., 105 U. S. 73, 26 L. Ed. 1024; Clearwater v. Meredith, 1 Wall. 25, 17 L. Ed. 604; Tomlinson v. Branch, 15 Wall. 460, 21 L. Ed. 189, and

other cases of like character. But not one of these decisions holds that the perpetrator of a fraud or the abuser of a trust or their privies may shield themselves behind the inactivity of the state, quiet the conscience and escape the grasp of a court of chancery more successfully by appropriating the property of a cestui que trust by means of a consolidation of corporations than he may by a decree of foreclosure and sale (Jackson v. Ludeling, 21 Wall. 616, 22 L. Ed. 492), by a transfer of all the property of a corporation and its dissolution (Ervin v. Oregon Ry. & Navigation Co. [C. C.] 20 Fed. 577, 580), by a lease (Meeker v. Winthrop Iron Co. [C. C.] 17 Fed. 48), or by any other legal device he may happen to adopt. The cases he cited have to do with transactions free from fraud, and while possibly pertinent to the charge in the bill that the consolidation was not authorized by law, they have no relevancy to the cause of action for fraud and breach of trust in the conception and execution of the consolidation.

Moreover, the position of counsel here overlooks the true nature and purpose of this suit. The gravamen of this bill is the deprivation of the complainant and those stockholders who unite with him of their just share of the property of the Edison Company, not the existence of the consolidated corporation. The purpose of the bill is not the ouster of that corporation, but the restoration to the holders of the minority of the stock of the Edison Company of their share of the property of that company or of its value. The prayer of the bill is not that the Consolidated Company be dissolved or deprived of its franchises and powers. There is in the bill, it is true, a prayer that the agreement of consolidation be set aside, and that the property of the Edison Company be restored to it, but this is a prayer for the means to an end, not for the end itself. The end is the restoration to the minority stockholders of the Edison Company of their share of the property of the latter corporation. A bill would not lie to make an individual trustee who had wrongfully appropriated to himself trust property more than sufficient to pay all his obligations, insolvent, but it would lie to restore to the cestui que trust the property he had thus appropriated although that restoration made the trustee insolvent. While it may be true that a bill would not lie to oust or dissolve the consolidated corporation, it will lie to take from it on behalf of the cestuis que trust all the trust property, franchises, and powers which have been transferred to it by the trustees in violation of their trust. The rule that the existence of a corporation may not be collaterally assailed by a private individual constitutes no bar to a suit by a minority stockholder to avoid for fraud or breach of trust a contract and act of consolidation of corporations and to restore the property of the corporation injured to its former owner.

The next objection to the bill is that the complainant is not a stockholder of, and cannot maintain a suit in behalf of the Edison Company because that corporation was extinguished by the consolidation. This might have been the result of a consolidation in the absence of fraud or breach of trust. Clearwater v. Meredith, 1 Wall. 25, 17 L. Ed. 604; Tomlinson v. Branch, 15 Wall. 460, 21 L. Ed. 189, Ridgway Township v. Griswold, 1 McCrary, 151, Fed. Cas. No. 11,819. But the contract and transaction by which this consolidation was effected were voidable for fraud and breach of trust at the suit of the Edison Company

or at the suit of the minority stockholders the moment they were made. Because the Edison Company was a trustee for the stockholders the latter could not maintain such a suit unless the former refused or was unable to institute it. This suit was brought by the complainant "on behalf of himself and all other persons similarly situated and especially the holders of the preferred stock of the defendant, the Edison Company, and for the use and benefit of said Edison Company." Now, if the majority of the stockholders of the Edison Company destroyed this trustee, as counsel argues, so that it was impossible for the corporation to institute or maintain a suit to avoid the contract and transaction, then the only hindrance to the maintenance of this suit by the complainant on his own behalf and on behalf of the other minority stockholders was thereby removed and he may secure adequate relief in this suit upon that ground. The truth is, however, that the Edison Company was not so irrevocably dissolved that its rehabilitation is beyond the power of a court of chancery. Its dissolution was wrought by the transfer, by means of the contract and act of consolidation, of its franchises, powers and property to the new corporation. That transfer, that act and that contract were voidable at the suit of the minority stockholders. A court of equity has plenary power to set them all aside and to restore to the Edison Company all its franchises, powers and property, if action so drastic becomes necessary in order to secure to them adequate relief. These voidable acts could not in their very nature eradicate the right of the stockholders to invoke the exercise of this power by a court of chancery. If they could, they would be valid, not voidable as they are.

It is next contended (1) that the complainant states no cause of action and prays for no relief on his own behalf and that if he does (2) he may not assert that claim and his claim for relief on behalf of his corporation in the same suit. But the gravamen of the bill, as we have seen, is the loss of the complainant and the other minority stockholders caused by the acts of the majority. Its purpose is to right this wrong, and it is to this end that the complainant prays in the alternative for the rehabilitation of his corporation or for a lien upon the property of the Edison Company and upon the property of the Consolidated Company for the value of his stock. The facts set forth in the bill are sufficient to sustain both his claim on his own behalf and his claim on behalf of the corporation. And where the same facts sustain the claim of a stockholder on his own behalf and his claim on behalf of his corporation and warrant the same or similar relief, it is not the duty of a court of equity, one of whose functions is to avoid a multiplicity of suits, to compel him to plead and prove these facts in two separate suits in order to obtain the relief to which he is entitled. It may determine both claims in the same suit and so mold its decree as to mete out substantial justice to all the parties.

Counsel argues that the complainant is entitled to no relief in equity because he has an adequate remedy at law, an action against the Consolidated Company for damages for the conversion of his stock, and he cites Lauman v. Railroad Co., 30 Pa. 42, 72 Am. Dec. 685; Gresham v. Bank (Tex. Civ. App.) 21 S. W. 556, International, etc., R. Co. v. Bremond, 53 Tex. 96, and Tanner v. Lindell R. Co., 180 Mo. 1, 25, 79 S. W. 155, 103 Am. St. Rep. 534. That the complainant might at his

option have affirmed the contract of consolidation and have maintained an action at law against the Consolidated Company 'for conversion is not denied. This is all that is decided in the Texas case. But he also had the option to repudiate the contract and the transaction and to maintain his suit in equity to avoid them. None of the cases to which counsel here refers involved any inequitable, oppressive or fraudulent action by the majority, and for that reason the decisions in them are inapplicable to the case at bar. Gresham v. Bank was a suit upon a complicated state of facts for the transfer of stock on the books of a corporation or for its value and the latter relief was granted. Lauman v. Railroad Co., 30 Pa. 42, was a suit by a minority stockholder to enjoin an authorized sale of all the property of his corporation to another for the stock of the latter. It rested on the sole ground that the complainant was not obliged to accept stock of another corporation for his interest in his own company and the court issued the injunction, but provided that it should be dissolved when the defendant gave security for the payment to the complainant of the value of his interest. Tanner v. Lindell R. Co., 180 Mo. 25, 79 S. W. 155, 103 Am. St. Rep. 534, was a suit in equity by minority stockholders to avoid a sale of all the property of their corporation and it was summed up by the Supreme Court of Missouri in these words:

"This they ask not upon a showing that any wrong has really been done them, not that the transaction was not fair and profitable, not that they were not afforded an opportunity of participation in it to the same extent that was accorded the most favored, but upon the bare naked legal proposition that it is a 'violation of the implied contract between the stockholders inter sese to sell the property of the corporation so as to disable it from doing business' without the consent of all. * * * If under these circumstances the sale was a breach of the implied contract the courts of law are open to the plaintiffs to sue for damages for the injury but there is nothing in the case to arouse a court of equity into action."

In the case in hand there is a showing that wrong has really been done to the complainant. The transaction assailed was not fair. The complainant was not accorded an opportunity of participation in the consolidation to the same extent that was accorded the most favored. On the other hand, the holders of the majority of the stock of his corporation arbitrarily took from him all his interest in the corporate property, and offered him in return for it nothing but stock in a new corporation which represented less than one-third of his just share of its assets, while they appropriated the other two-thirds to themselves. There is much in these facts to move a court of equity to action.

Nor is the suggestion that the complainant may not recover the value of his stock in this suit in equity because such a recovery would be inconsistent with his repudiation of the contract of consolidation and because he has not prayed for it, very material. The first prayer of the bill is for the restoration of its property to the Edison Company and this is in effect for a restoration to the complainant of his share of it. Now, as the court may under this prayer rehabilitate the Edison corporation, it may do less. It may grant a decree nisi, a decree that all its property, powers and franchises be restored to the Edison Company unless within a time certain the defendants pay to the complainant and those who join him the value of their share of the property

transferred to the Consolidated Company. Such a decree would be consistent with the repudiation of the contract of consolidation and with the first prayer in the bill. The value of this share would be estimated in equity, it is true, on such a basis that any increase of value which resulted at the time from its transfer to the Consolidated Company would be assigned to the complainants, because trustees who violate their duty may not profit thereby. Ervin v. Ore. Ry. & Nav. Co. (C. C.) 27 Fed. 625, 633. But, after all, this value might not differ very widely from the value of the complainant's stock. Moreover, the bill contains a prayer in the alternative for the rehabilitation of the corporation and the transfer of the 992 shares of stock to the complainant on its books or for the value of his stock, and where upon a given state of facts a party is uncertain whether he is entitled to a restoration of property or to the enforcement of a lien upon it for the value of his interest, he may pray for each in the alternative and the court will grant him the relief to which it deems him entitled. Hardin v. Boyd, 113 U. S. 756, 763, 5 Sup. Ct. 771, 28 L. Ed. 1141; Westinghouse Air Brake Co. v. Kansas City So. Ry. Co. (C. C. A.) 137 Fed. 26, 32; Maynard v. Tilden (C. C.) 28 Fed. 688, 703, 704; Fisher v. Moog (C. C.) 39 Fed. 665, 668; Peck's Ex'r v. Price (Ky.) 4 S. W. 306, 307; Gerrish v. Towne, 3 Gray (Mass.) 82; Halsey v. Goddard, 86 Fed. 25, 28; Chaffin v. Hull (C. C.) 39 Fed. 887, 889, 891; Davis v. Berry (C. C.) 106 Fed. 761; Barcus v. Gates, 89 Fed. 783, 791, 32 C. C. A. 337, 345. A court of equity may compel the payment of the value of stock upon a bill which contains a prayer in the alternative for its transfer and registration on the books of the corporation or for its value. Birmingham Nat. Bank v. Roden (Ala.) 11 South. 883, 884; In re Reading Iron Works (Pa.) 24 Atl. 202, 204; Cushman v. Thayer Mfg. Jewelry Co., 76 N. Y. 365, 367, 32 Am. Rep. 315.

It is said that the bill states no cause of action against the directors of the Edison Company, because the consolidation was not their act, but the act of the majority of its stockholders; and, in support of this contention, counsel calls attention to the decision in International, etc., R. Co. v. Bremond, 53 Tex. 96, 118, to the effect that a minority stockholder was not entitled to a personal judgment against a director in an action for conversion by means of a consolidation. But the case in hand is not an action of that nature, but a suit in equity for the rehabilitation of the old corporation and the transfer of the complainant's stock on its books or for a lien upon the property of the Consolidated Company for the value of his stock. The directors were in a substantial, if not technical, sense trustees for the minority stockholders. Jackson v. Ludeling, 21 Wall. 624, 625, 22 L. Ed. 492. They were necessary and actual actors in the breach of trust which injured the complainant. They executed the voidable contract of consolidation and if a decree for the relief first prayed in the bill, the rehabilitation of the Edison Company and the transfer of the 992 shares of stock should be found requisite to secure adequate relief to the complainant, the action of these directors would become essential to the execution of the decree. They are therefore proper, if not indispensable, parties to this suit. Sioux City Terminal, etc., Co. v. Trust Co. of North America, 27 C. C. A. 73, 75, 82 Fed. 124, 126. The fact that no demand for the transfer of the

shares was made until after the consolidation was effected is not material to the cause of action for their transfer, because, if the directors and the majority stockholders disabled the corporation from making the transfer, a demand thereafter would have been futile, and it was not a condition precedent to this cause of action. Nor is the bill multifarious. No bill is multifarious which presents a common point of litigation, the decision of which will affect the whole subject-matter and settle the rights of all the parties to the suit. It is not indispensable that all the parties should have an interest in all the matters contained in the litigation. It is sufficient if each party has an interest in some essential matters involved in the suit and they are connected with the others. Brown v. Deposit Co., 128 U. S. 403, 412, 9 Sup. Ct. 127, 32 L. Ed. 468; Hayden v. Thompson, 17 C. C. A. 592, 71 Fed. 60; Kelley v. Boettcher, 85 Fed. 55, 29 C. C. A. 14; Curran v. Campion, 85 Fed. 67, 70, 29 C. C. A. 26, 29. The question, were the duties imposed upon the directors and the holders of the majority of the stock by their fiduciary relation to the holders of the minority faithfully discharged in the conception and execution of this consolidation? presents a common point of litigation the decision of which will affect the whole subject-matter and settle the rights and remedies of all the parties to this suit. The bill is not multifarious because the complainant bases his claim for the rehabilitation of the Edison Company and the restoration to it and to himself of their respective interests in the property of the corporation (1) upon the alleged fact that the consolidation was unauthorized by the statutes of Missouri; (2) upon the alleged fact that the consolidation was prohibited by the anti-trust laws of that state; (3) upon the alleged fact that it was effected by a breach of trust and by fraud; and (4) upon the alleged fact that the Edison Company and the complainant each has a cause of action for this relief. The union of several causes of action for the same demand or relief does not constitute multifariousness. Westinghouse Air Brake Co. v. Kansas City So. Ry. Co. (C. C. A.) 137 Fed. 26, 32.

The conclusion of the whole matter is that the bill presents facts sufficient to sustain a decree for the rehabilitation of the Edison Company and for the transfer of the 992 shares of stock to the complainant upon its books, if such decree proves to be necessary in order to procure adequate relief to the complainant. But the court will not be restricted to this or any other specific form of relief when the final hearing has been concluded. It is not impossible that the consolidation of the corporations has been affirmed by all the stockholders of the Edison Company except the complainant, that the bonds and stocks of the Consolidated Company have been sold upon the market to many persons who had no connection with the consolidation and that great changes in the character, use and value of the property of the Edison Company have been made since it was transferred to the new corporation, so that its rehabilitation would entail upon the consolidated corporation a loss many times the value to it of the complainant's interest in the property he seeks. These facts, if they exist, create no bar to the recovery of complete relief by the complainant, but they may be considered by the court below in determining whether a decree nisi or a decree for a lien upon the property of the Consolidated Company, or upon the property of the Edison Company in its hands, for the value of the complainant's interest,

would not grant to him adequate relief and be more equitable to all the parties to the suit than a decree of rehabilitation. A court of equity may vary, qualify, restrain, and modify the remedy it applies so as to do equity and to avoid inequity to mutual and adverse claims, and the substantial rights of all the parties.

The decree below is reversed, and the case is remanded to the court below, with instructions to permit the defendants to answer, and to take further proceedings not inconsistent with the views expressed in this opinion.