William J. Logan, Appellant, *v.* The New York Sugar Refining Company, Respondent.

Second Department, February 2, 1917.

Corporations — sale of corporate stock — right of dissenting stockholder, who has been denied dividends, to an accounting — option — Statute of Limitations.

Where a corporation sells or assigns all of its capital stock except that held by one stockholder, and the assignee without a merger forms a new corporation with said stock and the stock of two other companies, said stockholder may bring a suit in equity to obtain his share of the accumulated profits and earnings of the corporation. He has a right to an accounting.

Although it may appear that his money has been paid to others he may still elect to take a decree against the corporation instead of seeking to follow the profits into the hands of illegal holders.

The fact that such stockholder signed an option to sell his stock to the assignee, which he subsequently revoked, is no defense to the corporation which was not a party thereto.

Under the circumstances the period of accounting should only cover the ten years preceding the commencement of the action, and is governed by section 388 of the Code of Civil Procedure.

Appeal by the plaintiff, William J. Logan, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings

on the 13th day of April, 1916, granting defendant's motion for judgment on the pleadings, consisting of an amended complaint, an amended answer, a reply, and a demurrer, and dismissing the amended complaint; and also an appeal is taken from the judgment in favor of the defendant, entered in the office of the clerk of the county of Kings on the 15th day of April, 1916, dismissing the amended complaint pursuant to the said order. Plaintiff further appeals from an order entered in said clerk's office on the 13th day of April, 1916, denying his motion for judgment on the pleadings.

The defendant, a New York corporation, was organized in 1897 with a capital stock of $600,000, of which plaintiff has owned 205 shares of the par value of $20,500. He began this action on July 23, 1912. He avers that on May 29, 1900, the entire capital stock of defendant (except plaintiff's shares) with the stock of the Mollenhauer Sugar Refining Company and the National Sugar Refining Company was sold or assigned to one James H. Post; that Mr. Post then organized, under the laws of New Jersey, a new $20,000,000 corporation known as the National Sugar Refining Company of New Jersey; that Mr. Post received 82,500 shares thereof, which he delivered to the defendant corporation in exchange for all its entire capital stock, except plaintiff's shares; that at the first meeting of defendant's stockholders after the exchange, held on January 28, 1901, the directors elected were the directors of the New Jersey corporation, and that Mr. Post, president of the New Jersey corporation, was elected president of the defendant; that no meeting of defendant's shareholders has since been called or held, and no subsequent election of directors has occurred; that since said sale of capital stock defendant has been operating with large net revenues, all of which has been paid to the New Jersey corporation; that defendant has sold a large amount of its property and assets, and distributed the proceeds among other stockholders than this plaintiff; that the New Jersey corporation is not itself refining; that its income is from subsidiary companies which it controls. It has paid $10,000,000 in dividends, the greater part of which was from the defendant corporation; that defendant has refused to pay anything on his stock to plaintiff, who is entitled to an accounting thereof.

Second Department, February, 1917. [Vol. 176.

The amended answer averred that on May 28, 1900, plaintiff owned $82,000 of defendant's bonds and 205 shares of its stock; that Mr. Post, with associates, then contemplated forming a New Jersey corporation, for which they were to acquire at least two-thirds of defendant's stock and bonds, to be paid for in preferred stock of the corporation to be formed.

That accordingly Mr. Post, on behalf of those associating with him, entered into an agreement, "Exhibit A" annexed. Among those who signed it was plaintiff, who was then a director of defendant; that all parties to Exhibit A, except plaintiff, performed the covenants and conditions thereof, which were done with plaintiff's knowledge. (By plaintiff's reply, it appears that on July 24, 1900, plaintiff notified Post that he would not transfer his stock.)

Exhibit A is an agreement for an option of purchase by Mr. Post and those with him as "the purchasers," with the stockholders who should sign, called "the sellers." The sellers shall procure the holders of two-thirds of the bonds and stock to become parties to the agreement. If two-thirds agree, the purchasers shall take steps to organize, or to use an existing corporation in New Jersey with preferred stock carrying six per cent cumulative dividends, of which corporation Mr. Post was to be the first president.

An option is given running to May 29, 1900, to buy all defendant's stock (not less than two-thirds thereof) at a price of $3,000,000, payable in the preferred stock of the new corporation. Each stockholder is also severally to turn in bonds in four times the amount of his stock.

Acceptance of the option is to be signified to Claus Doscher, one of "the sellers," within the time specified, with a certified check for $50,000, to be forfeited to "the sellers" if "the purchasers" fail to consummate. There were also provisions for taking over existing contracts, also certain material for refining, and spare parts of defendant's machinery. The sellers further were to give proper deeds to pass their property.

An appropriate provision concludes to embody the undertaking by each signing stockholder. In the attached copy the fifth signer is plaintiff, as holding 200 shares.

The answer further avers that 205 preferred shares in the

National Sugar Refining Company of New Jersey have been set apart for plaintiff, and that the dividends thereon have been regularly deposited in the United States Trust Company and held for him; that Mr. Post has repeatedly tendered to plaintiff such shares in exchange for his 205 shares in defendant corporation, but that plaintiff refuses to accept same. Further, that plaintiff has not exchanged his 205 shares with Mr. Post, or tendered same, and neglects and refuses so to do; that, therefore, he has not " clean hands " to come into this court of equity.

As a *second* defense: That plaintiff, a signer of this agreement, permitted the defendant to carry it out and to transfer all its assets. It charges such knowledge at all times since August, 1901; that thereby plaintiff has been guilty of inexcusable laches, which should prevent him from maintaining this suit.

A *third* defense sets up similar matters to constitute an estoppel.

A *fourth* defense pleads the six-year Statute of Limitations.

A *fifth* defense pleads the ten-year Statute of Limitations.

A *sixth* defense: That by entering into Exhibit A plaintiff transferred his interest in his stock; that defendant's stock certificates issued to plaintiff have a clause requiring plaintiff first to offer his stock to the corporation, or to such person as it may designate, which shall have thirty days after such offer in which to purchase same upon paying its book value as it stood on the corporation books the previous January first; that before entering into Exhibit A plaintiff did not offer and never has offered his certificate to defendant, so that defendant could purchase the same; that defendant was willing to pay more than the book value, as it stood January 1, 1900, for plaintiff's stock.

*Seventh* defense: That Claus Doscher and others, acting as trustees under Exhibit A, received the moneys realized from sale of defendant's assets, turned them over to Post, who deposited same for plaintiff, and so notified plaintiff; and is still ready and willing to turn same over to plaintiff. All of which acts in carrying out Exhibit A were with plaintiff's knowledge and without objection on his part.

*Eighth* defense: That Exhibit A provided that B. H. Howell, Son & Company should, within six days after accept-

ance of this option, buy two-thirds of the preferred stock for cash; that Claus Doscher, Henry Doscher and Frederic Brommer were to adjust the outstanding contracts, and to receive and exchange the shares of stock and were to pay dividends to the defendant's stockholders, as the same were realized.

That such moneys were turned over to Mr. Post, who deposited same for the benefit of plaintiff, and that said Mr. Post has held and now holds them for plaintiff's benefit. All of which were done at the direction of the Doschers and Brommer, as plaintiff's agents and representatives.

*Ninth* defense is an averment of a tender of plaintiff's *pro rata* share of stock of the National Sugar Refining Company of New Jersey, which plaintiff refused and still refuses. That after such transfer of defendant's property, plaintiff did not within sixty days apply to the Supreme Court to appraise the value of his interest in the assets of defendant, under section 17 of the Stock Corporation Law (Consol. Laws, chap. 59; Laws of 1909, chap. 61), or as provided by section 221 of the General Corporation Law (Consol. Laws, chap. 23; Laws of 1909, chap. 28).

The reply, after certain denials, more or less formal, sets forth that on July 24, 1900, plaintiff notified Mr. Post that he would not be bound by the agreement Exhibit A, and that he would not deliver his stock and bonds thereunder. As a further reply applicable to the first, second, third, sixth, seventh, eighth and ninth defenses, plaintiff sets up the judgment rendered July 6, 1912, in the first judicial district, of *Post* v. *Logan,* in favor of Logan (the plaintiff here), refusing to Mr. Post specific performance (affd., 155 App. Div. 934, and 215 N. Y. 631). Mr. Justice Page's opinion is also pleaded. He found that plaintiff Post was guilty of laches in waiting till 1910 before bringing that suit. Furthermore, that the United States had begun proceedings to dissolve the National Sugar Refining Company of New Jersey, with other refining companies, as engaged in a restraint of trade, so that a decree of specific performance would command Logan to give up stock in a lawful corporation in exchange for stock in an unlawful one. He also adverts to the fact that by a secret agreement the preferred stock of the National Sugar Refining Company was turned over to the American Sugar

Refining Company, which thereby obtained control, a purpose not disclosed until through a Congressional investigation. Defendant demurred to this reply. Both sides moved on the pleadings for judgment.

The learned justice at Special Term denied plaintiff's motion, and granted defendant's motion, and rendered judgment dismissing the complaint. He held plaintiff's right to profits dependent on a dividend being first declared, also pointed out that defendant appeared to have no funds applicable to the payment of dividends, and finally suggested that plaintiff's remedy might be in the form of a stockholder's action.

*John D. Fearhake* [*James M. Gifford* with him on the brief], for the appellant.

*Lewis H. Freedman* [*Adrian H. Larkin* and *Orville C. Sanborn* with him on the brief], for the respondent.

PUTNAM, J.:

This appeal involves the rights of a dissenting stockholder left practically alone by his staying out of a general sale of stock without a merger, which has emptied his corporation of its property and terminated the functions of its board of directors. A business corporation cannot thus ignore a stockholder for fifteen years. Neither may it equitably demand to respond only in a stockholder's suit, after defendant has obtained every other share of its stock and place them together in the hands of the combination, so that no parties could be brought in to form a representative action. Here the alienation of corporate effects, interposed as a defense, is supported by the saying of a vice-chancellor in 1831, that the corporation does not stand in any fiduciary relation to its stockholders (*Verplanck* v. *Mercantile Ins. Co.*, 1 Edw. Ch. 84, 87, and repeated as late as 1867 in *Karnes* v. *Rochester & Genesee Valley R. R.*, 4 Abb. Pr. [N. S.] 107), a principle confining to the directors the affirmative trust duties toward stockholders. Certainly this is not applicable to directors who have ceased to exercise their functions.

Modern authority sustains this jurisdiction in like circumstances. "There is a limit to this discretion [of directors]; and

the courts will not allow the directors to use their powers oppressively by refusing to declare a dividend when the net profits and the character of the business warrant it. A court of equity may compel the declaration of a dividend at the suit of the minority stockholders of a corporation. It has been held that the court will compel the officers of a foreign corporation to declare a dividend where it clearly appears that it is their duty to do so." (7 R. C. L., tit. "Corporations," § 269.)

The rights of minority stockholders in equity are sustained in *Farmers' L. & T. Co.* v. *N. Y. & N. R. Co.* (150 N. Y. 410); *Sage* v. *Culver* (147 id. 241); *Pondir* v. *New York, L. E. & W. R. R. Co.* (72 Hun, 384, 389).

The circumstances here resemble those in *Jacobus* v. *Diamond Soda Water Mfg. Co.* (94 App. Div. 366). (See, also, *Hinds* v. *Fishkill & Matteawan Gas Co.*, 96 App. Div. 17. See, also, *Schwab* v. *Potter Co.*, 194 N. Y. 409, as to the invalidity of the defendant's plan to create another corporation.)

This, however, is not a suit to set aside a sale or annul a disposition of the corporation's assets, but simply to obtain the plaintiff's share of the profits and earnings of defendant's business. The merit of such a right seems incontestable. (See *Wheeler* v. *Abilene Nat. Bank Bldg. Co.*, 159 Fed. Rep. 391, and authorities cited at p. 394; other decisions are *Hawes* v. *Oakland*, 104 U. S. 450, 460; *Pratt* v. *Pratt, Read & Co.*, 33 Conn. 446, 455; *Miner* v. *Belle Isle Ice Co.*, 93 Mich. 97, 112; *Fougeray* v. *Cord*, 50 N. J. Eq. 185, 197.)

In *Stevens* v. *United States Steel Corporation* (68 N. J. Eq. 373) the court said: "Subject, of course, to provisions in the charter, and also to the by-laws of the company, it is for the directors to say whether profits shall be distributed to the stockholders or retained for the purpose of the corporate business. It is, however, equally well settled that this discretionary power is not absolute, and when the directors 'improperly refuse to make a division of unused profits,' a court of equity will intervene on behalf of any stockholder who may complain. *Laurel Springs Land Co.* v. *Fougeray*, 50 N. J. Eq. (5 Dick.) 756, 759, 760 [1893]; *Fougeray* v. *Cord*, 50 N. J. Eq. (5 Dick.) 185, 197 [1892]; *Griffing* v. *Griffing Iron Co.*, 61 N. J. Eq. (16 Dick.) 269, 271; 2 Cook Corp. [4th ed.] § 545. These gen-

eral principles must be kept in mind in dealing with such stat-
utes as those which a little later we are to construe.    It does
not follow that if the minority stockholders have not the benefit
of a hard and fast statutory rule for the distribution of profits,
that therefore they are exposed to a permanent deprivation of
dividends, and that they must wait indefinitely and accept an
increasing book value of their stock in place of the cash divi-
dends which they would prefer to enjoy.    The New Jersey
cases above cited, as well as many cases in other States, illus-
trate how ample are the powers of courts of equity to enforce
the rights and satisfy the reasonable expectations of stockholders
in the matter of the declaration of dividends when profits,
which are not required to be retained for the purposes of the
corporate business, including protection against emergencies,
are unreasonably and unjustly allowed to remain undistrib-
uted." (Pp. 377, 378.)    Except that here the plaintiff neces-
sarily sues alone, his rights seem enforcible under the reason-
ing of *Godley* v. *Crandall & Godley Co.* (212 N. Y. 121).

The other shares besides plaintiff's have all been exchanged
and passed into control of a third corporation.    His option to
sell, which he revoked, has been declared unenforcible in
equity against him.    He has a right to an accounting.
Although it may appear that his money has been paid to others,
he may still elect to take a decree against defendant, instead of
seeking to follow these profits into the hands of illegal holders.
We fail to see any lack of equity in appellant's position.

The answer, by its denials, in a qualified way, raises no
issue.    The right to an appraisal of plaintiff's stock under sec-
tion 17 of the Stock Corporation Law (Consol. Laws, chap. 59;
Laws of 1909, chap. 61) and section 221 of the General Corpora-
tion Law (Consol. Laws, chap. 23; Laws of 1909, chap. 28),
invoked in the ninth defense, would charge plaintiff under a
statute not in existence until March 20, 1901 (Laws of 1901,
chap. 130.)*    Plaintiff's signing an option (which he afterwards

---

* The prior provisions for appraisal of a stockholder's interest in cor-
porate assets were for cases of sale or exchange of assets after, or in the
course of, corporate dissolution.    (See Stock Corp. Law [Gen. Laws, chap.
36; Laws of 1892, chap. 688], § 57, added by Laws of 1896, chap. 932, as amd.
by Laws of 1900, chap. 760.) — [BY THE COURT.

revoked) supplies no defense to defendant, who was not a party thereto.

On an accounting, however, plaintiff should not be allowed to go back to the date of this combination in 1900. In these special circumstances, where no directors met, and it was clear that the earnings were going to other concerns, so that plaintiff would be permanently deprived, the period of accounting should go back to the 23d of July, 1902, under the ten-year Statute of Limitations provided by the Code of Civil Procedure, section 388.

I advise to reverse, with costs of this appeal, and to grant, with ten dollars costs, plaintiff's motion for an interlocutory decree, directing an accounting for the period since July 23, 1902.

JENKS, P. J., THOMAS and RICH, JJ., concurred; CARR, J., not voting.

Order and judgment reversed, with costs of this appeal, and plaintiff's motion for an interlocutory decree granted, with ten dollars costs. Order to be settled on notice.